**UNITED STATES of America,**

v.

**Darnyl PARKER, John A. Ferby, David Rodriguez, Robert E. Hill, William Parker, Defendants.**

No. 00–CR–053A.

United States District Court,
W.D. New York.

April 19, 2001.

432

Denise E. O'Donnell, United States Attorney, Buffalo, NY (Robert C. Moscati,

and Kathleen M. Mehltretter, Assistant United States Attorneys, of Counsel), for Government.

Harrington & Mahoney, Buffalo, NY (Mark J. Mahoney, of Counsel), for Defendants Darnyl Parker.

Anne E. Adams, Buffalo, NY, for Defendant Ferby.

Brown & Kelly, LLP, Buffalo, NY (Rodney O. Personius, of Counsel), for Defendant Rodriguez.

Juan E. Irene, Buffalo, NY, for Defendant Rodriguez.

Steiner & Blotnik, Buffalo, NY (Michael M. Blotnik, of Counsel), for Defendant Hill.

Michael J. Stachowski, Buffalo, NY, for Defendant William Parker.

Pratcher & Associates, Buffalo, NY (Joseph M. Cox, of Counsel), for Defendant Sayles.

## DECISION AND ORDER

ARCARA, District Judge.

■ This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1)(A), on April 7, 2000. On December 22, 2000, defendants filed a joint motion for dismissal, to strike surplusage and for suppression of evidence. On January 10, 2001, the government filed a response to the motion. Magistrate Judge Foschio heard oral argument on the motion on March 15, 2001.

On April 19, 2001, Magistrate Judge Foschio filed a Report and Recommendation, recommending that the defendants' joint motion to dismiss and for suppression of evidence be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 58.2(a)(2) of the Local Rules of Criminal Procedure for the United States District Court for the Western District of New York ("Local Rules of Criminal Procedure"), defendants were required to file any objections to the Magistrate Judge's Report and Recommendation by May 7, 2001. On May 3, 2001, defendants filed a motion for an extension of time to file objections, stating that they needed additional time to evaluate the 78–page Report and Recommendation. On May 4, 2001, the Court granted the motion and extended the time to file objections to June 4, 2001.

On June 4, 2001, defendants filed a second motion for extension of time. This time, defendants stated the need for the extension as follows:

> While a draft of these objections has been prepared, this additional time is needed in order to circulate and finalize the objections. That process necessarily requires the coordination of efforts and incorporation of changes and revisions among counsel for five of the six defendants.

That same day, June 4, 2001, the Court granted defendants' motion and extended the time to file objections to June 8, 2001.

On Friday, June 8, 2001, at 4:27 p.m., defendants filed yet a third motion for extension of time. This time, defendants explained the need for the extension as follows:

> While a draft of these objections has been prepared, this additional time is needed in order to circulate and finalize the objections. That process necessarily requires the coordination of efforts and incorporation of changes and revisions among counsel for five of the six defendants.

This is obviously the exact same reason given in their June 4th motion.

On Monday, June 11, 2001, before the Court had a chance to rule on or even consider the June 8th motion for an exten-

sion, defendants submitted their proposed objections. The objections are 93 pages long.[1] Along with the objections, defendants filed a motion for permission to exceed the 25–page limit for briefs contained in Rule 49.1(e) of the Local Rules of Criminal Procedure.

After careful consideration, the Court denies defendants' June 8th motion for extension of time. Defendants waited until the last minute to file their extension motion, clearly assuming that the Court would automatically grant the motion. However, the Court has granted defendants two previous extensions, and they have cited no new reason for a third extension. Defendants have already been given additional time to circulate and finalize their proposed objections. No satisfactory explanation is given as to why the time was insufficient. Absent a sufficient reason, this Court expects that its scheduling orders will be obeyed. Scheduling orders are not mere formalities that can be disregarded or treated cavalierly. Waiting until one-half hour before the close of business on the day the objections are due to file a motion for an extension of time demonstrates a lack diligence in trying to comply with the Court's scheduling orders.

Accordingly, because defendants' objections were not filed by June 8, 2001, they are untimely and the Court shall not consider them.[2]

After carefully reviewing the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties, and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1)(A), and for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, the defendants' joint motion to dismiss and for suppression of evidence is denied. Trial in this case shall commence on July 17, 2001 at 9:30 a.m. A final pretrial conference shall be held on July 5, 2001 at 2:00 p.m.

IT IS SO ORDERED.

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned, pursuant to 28 U.S.C. § § 636(b)(1)(A) and 636(b)(1)(B), on April 7, 2000 by Hon. Richard J. Arcara. The matter is presently before the court on Defendants' Joint Motion for Dismissal, to Strike Surplusage, and for Suppression of Evidence filed December 22, 2000 ("Defendants' Motion") (Doc. # 66).[1]

### BACKGROUND

In this case, Defendants Darnyl Parker, Ferby, Rodriguez, and Hill are charged

---

1. The objections are not double spaced. There appears to be only a single space or one and one-half spaces between lines. In the future, all briefs submitted by defense counsel shall be double spaced.

2. Similarly, defendants waited until the last minute to request permission to exceed the page limitation in the Local Rules of Criminal Procedure. Again, defendants simply assumed that the Court would grant their request. By waiting until the eleventh-hour to make the request, defendants put the Court in a difficult position where there is no middle ground; the Court must either except the 93–page brief or deny the request, which results in the objections being untimely. After reviewing the file, however, the Court sees no reason why it should take defendants 93 pages to state their objections. After all, defendants' original motion before the Magistrate Judge was only 43 pages and the Report and Recommendation itself is only 78 pages.

1. Defendants' motion to strike surplusage is non-dispositive. *See United States v. King*, 2000 WL 362026, *2 n. 1 (W.D.N.Y. March 24, 2000).

with violating 18 U.S.C. § 241, conspiracy to violate federally protected civil rights (Count I); and 18 U.S.C. § 371, conspiracy to commit theft of government property in violation of 18 U.S.C. § 641 (Count II); Defendants Darnyl Parker, Ferby, and Rodriguez are charged with theft of government property on January 7, 2000, in violation of 18 U.S.C. § § 641 and 2 (Count III). Defendants Darnyl Parker, Ferby, Rodriguez, and Hill are charged with theft of government property on February 13, 2000, in violation of 18 U.S.C. § § 641 and 2 (Count IV).

Count V of the Indictment charges Defendants Darnyl Parker, Ferby, Rodriguez, and Hill with conspiracy to commit robbery and extortion, including under color of official right, in violation of 18 U.S.C. § 1951. Count VI of the Indictment charges Defendants Darnyl Parker, Ferby, Rodriguez, and Hill with an attempted violation of 18 U.S.C. § § 1951 and 2, by robbery and extortion, including under color of official right, on February 13, 2000, by the taking and obtaining of $36,442 from an undercover agent believed by Defendants to be a drug dealer. Count VII charges Darnyl Parker, Ferby, Rodriguez, and Hill with a violation of 18 U.S.C. § 924(c), carrying and possession of a firearm in furtherance of the crimes of violence alleged in Counts V and VI.

Defendant Darnyl Parker is individually charged with obtaining $1,000, on November 17, 2000, from a confidential source, whom Defendant believed to be a drug dealer, by extortion, including under color of official right, in violation of 18 U.S.C. § § 1951 and 2 (Count VIII). Parker is also charged with obtaining, on January 5, 2000, $1,000 from the confidential source, by extortion, including under color of official right, in violation of 18 U.S.C. § § 1951 and 2. Parker is further charged, in Count X, with conducting and attempting to conduct, a financial transaction involving the transfer and delivery of $2,500, represented to be proceeds of an unlawful narcotics transaction prohibited by 21 U.S.C. § 841(a)(1), in violation of 18 U.S.C. § § 1956(a)(3)(A) and 2.

In Count XI, the Indictment charges Defendants Darnyl Parker, William Parker, and Reno Sayles with conspiracy to possess with intent to distribute cocaine, on November 2, 1999, in violation of 21 U.S.C. § 846.

Finally, Defendant Ferby is charged, in Count XII, with obtaining information from a government agency, through unauthorized access to a computer, for unlawful purposes and private gain, as alleged in Counts I, II, and III, in violation of 18 U.S.C. § § 1030(a)(2)(B), 1030(c)(2)(B) and 2.

On August 28, 2000, Defendants filed a motion for a bill of particulars and discovery. (Doc. # 42). An Amended Bill of Particulars was filed by the Government on September 13, 2000 (Doc. # 48). By Decision and Order ("the D & O") dated November 3, 2000 (Doc. # 54), the motion was granted in part, denied in part, and dismissed as moot in part. Defendants subsequently filed objections. On February 27, 2001, District Judge Arcara rejected Defendants' objections and affirmed the D & O (Doc. # 81).

Defendants' Joint Memorandum of Law was filed December 27, 2000 (Doc. # 67); Defendants' Amended Joint Memorandum of Law was filed December 29, 2000 (Doc. # 67) ("Defendants' Memorandum"). The Government's Response to Defendants' Motions was filed on January 10, 2001 (Doc. # 70); the Government's Amended Response was filed on January 23, 2001 (Doc. # 72) ("Government's Response"). Defendants' Reply Memorandum of Law was filed January 23, 2001 (Doc. # 71)

("Defendants' Reply"). Oral argument was conducted March 15, 2001.[2]

## FACTS [3]

Defendants Darnyl Parker, Rodriguez, and Hill are police officers employed by the City of Buffalo Police Department, a law enforcement agency operating under the laws of the State of New York, and are alleged during the relevant time periods, to have been assigned as detectives to the Department's Narcotics Unit. Indictment Introduction ¶¶ 1–2. Defendant Ferby is an agent employed by the United States Drug Enforcement Agency ("DEA") and, during the relevant periods as alleged in the Indictment, assigned to the same Buffalo Police Narcotics Unit as Parker, Rodriguez, and Hill. *Id.*, ¶ 2.

The Indictment alleges that Defendants Darnyl Parker, Ferby, Rodriguez, and Hill, while acting as police officers under color of state law, engaged in a conspiracy to violate the constitutional rights of certain persons, including "Jamaican" drug dealers within the City of Buffalo, specifically the protections against unreasonable search and seizure and the right to due process of law. Indictment Count I ¶ 2. The conspiracy is alleged to have commenced no later than November 10, 1999 when Defendant Darnyl Parker met with a known drug trafficker, but who, unknown to Parker, was then also a confidential source ("CS–1") for the Federal Bureau of Investigation ("FBI"). Indictment Count I ¶ 4.

On November 2, 1999, at a meeting between Parker and CS–1 at Parker's residence, CS–1 gave Parker $2,500, representing part of the proceeds of Parker's earlier $5,000 stake in a prospective cocaine transaction, conducted by CS–1, to be reinvested for Parker's benefit and profit by CS–1 in a future cocaine transaction. Indictment Count X; Complaint, ¶ 13. During a meeting with CS–1 on November 10, 1999, Parker stated to CS–1 that Parker and others were interested in robbing "Jamaicans," apparently referring to illegal drug traffickers from that country, and asked CS–1 if he knew any such persons. Indictment Count I, ¶ 14. Parker pursued the subject with CS–1 at meetings with CS–1 on November 17 and November 23, 1999. *Id.*, ¶¶ 6, 7.

At the November 17th meeting, CS–1 paid Parker $1,000 in government funds in return for sensitive law enforcement information provided by Parker to CS–1 and another person regarding local drug investigations. Complaint, ¶¶ 6, 15; Indictment Count VIII. Also, at the same meeting, Parker is alleged to have repeatedly requested CS–1 to sell some cocaine to Parker's son, William Parker, a co-defendant in Count XI. Indictment Count XI; Complaint, ¶ 15. During the November 17th meeting with CS–1, Parker also stated to CS–1 that he was interested in robbing the Jamaican drug traffickers, but had no interest in arresting them, and assured CS–1 he would be compensated for his assistance in Parker's robbery plan. Complaint, ¶ 15.

Following two meetings with CS–1 on December 22 and December 29, 1999, Parker was told by CS–1, on January 5, 2000, that the supposed Jamaican drug dealer

---

**2.** By letter dated April 13, 2001, the Government informed the court that Defendant Sayles entered a plea of guilty before the District Judge to a superseding information (Doc. # 87) in resolution of the instant charge and that, accordingly, the motion should be deemed withdrawn as to Defendant Sayles.

**3.** Facts are taken from the allegations of the Indictment, the Complaint, filed on March 1, 2000 (Doc. # 1), the Amended Bill of Particulars (Doc. # 48), and the papers filed in connection with the instant motion.

would soon be in Buffalo, that CS–1 would inform Parker of the location of the drug dealer's stash house on West Avenue in Buffalo and vehicle description, and that the dealer would have money on him. Indictment Count I, ¶¶ 9–11. At the December 22nd meeting, Parker said to CS–1, "Let's do it, let's do it, let's do it." At the December 29th meeting, Parker asked CS–1 to give him two days prior notice of the drug dealer's expected visit "so I can get ready." *Id.*, ¶¶ 9, 11.

On January 5, 2000, during a meeting with Parker at his residence in Buffalo, CS–1 paid Parker another $1,000 in government funds for providing CS–1 with sensitive law enforcement information. Indictment Count IX; Amended Bill of Particulars No. 22; Complaint, ¶ 24.

After conducting surveillance on what they believed was the Jamaican drug dealer's stash house at 929 West Avenue in Buffalo on January 7, 2000, Defendants Darnyl Parker, Ferby, and Rodriguez, while acting in their official capacity as Buffalo police officers, at about noontime, made a warrantless and unauthorized forcible entry into the apartment at the purported drug dealer's stash house intending to steal cash and property belonging to the dealer, during which entry they stole a gold watch and a gold ring which had been secretly placed there by investigators. Indictment Count I, ¶ 17; Amended Bill of Particulars No.13. Subsequently, on January 10, 2000, at approximately 9 a.m., in furtherance of the conspiracy, Ferby allegedly made a computer inquiry regarding reported criminal activity at the 929 West Avenue address through a federal government information data base using facilities at the local DEA office. *Id.*, ¶ 20; Amended Bill of Particulars No. 29.

After an unsuccessful attempt by Defendants Parker and Hill to effect a further unlawful reentry into the West Avenue stash house, which took place on January 15, 2000, Parker met with CS–1 on January 24, 2000 at which time Parker requested CS–1 inform him when the "Jamaican" drug dealer would be in Buffalo so that Parker "can have [his] people ready." Indictment Count I, ¶¶ 25–27. Parker again met with CS–1 to ascertain when the drug dealer would arrive in Buffalo and was told by CS–1 that the drug dealer would be at a particular location in the City of Buffalo on February 13, 2000. *Id.*, ¶¶ 29, 30.

On February 13, 2000, after surveillance of the alleged drug dealer, then unknown to Defendants to be an undercover agent with the Federal Bureau of Investigation ("FBI"), Kevin White ("Agent White"), Defendants Darnyl Parker, Ferby, Rodriguez, and Hill, acting in their official capacity as Buffalo police officers and believing Agent White to be the "Jamaican" drug dealer previously identified by CS–1, stopped, detained and searched Agent White, and his vehicle, eventually robbing Agent White of $36,442 in government funds which Defendants then believed to be proceeds of narcotics trafficking by White, posing as the Jamaican drug dealer previously described to Defendants by CS–1. Indictment, ¶ 33. Defendants' stop, search, and seizure of White, and the robbery took place early in the evening on February 13th in a public parking lot at the corner of Elmwood Avenue and Allen Street in Buffalo. Amended Bill of Particulars No. 13.

According to the Indictment, Defendants never officially reported the stop of Agent White nor the seizure of the money from White, nor did Defendants inventory the money, turn it in to the Buffalo Police Department as evidence, give White a receipt for the money taken from him, or arrest White as a narcotics trafficking suspect. Indictment Count I, ¶¶ 36, 39. Instead, Defendants converted the funds for

their own purposes or those of another person. *Id.*, ¶ 38. It is also alleged that when Defendants stopped and robbed White, the fact that they were armed facilitated their ability to threaten White, and to successfully complete the planned robbery. *Id.*, ¶ 4.

The Defendants' burglary, and attempted break-in, at the West Avenue apartment were the subject of video and audio surveillance. Complaint, ¶ ¶ 26, 31. The stop, detention, search and seizure of money from Agent White on February 12, 2000 was also monitored by surveillance along with intercepts of Defendant Parker's cellular telephone conversations with his three co-conspirators. Complaint, ¶ ¶ 53, 54 n. 6, 63. Most of the conversations between Defendant Darnyl Parker and CS–1 were consensually recorded by the investigators. *Id.*, ¶ 3.

For CS–1's assistance in setting up Defendants' scheme to rob the "Jamaican" drug dealer, Darnyl Parker allegedly gave CS–1 $7,000, on February 14, 2000, at a meeting at Parker's residence, as his share of the robbery proceeds. Indictment Count I, ¶ 35; Complaint, ¶ 65. At that time, Parker asked CS–1 to sell some cocaine to Parker's son, co-defendant William Parker, and CS–1 indicated he would contact Parker in the future to arrange for a cocaine distribution to William Parker. Indictment Count XI; Complaint, ¶ 65.

Allegedly, Darnyl Parker again met with CS–1 on, Tuesday, February 22, 2000 at which time CS–1 told Parker that William Parker should arrange to pay CS–1 some money toward the purchase of cocaine if William Parker still was interested. Indictment Count XI; Complaint, ¶ 68. Darnyl Parker told CS–1 to contact him that Friday to arrange for making the payment. Complaint, ¶ 68. Darnyl Parker eventually telephoned CS–1 on Monday, February 25, 2000, and, later that day,

phoned Reno Sayles, a relative and co-defendant in Count XI, to contact Parker regarding arranging for the cocaine sale to William Parker. Indictment Count XI; Complaint, ¶ ¶ 69, 70. At about 3 p.m., Darnyl Parker, William Parker, Reno Sayles and CS–1 met at Darnyl Parker's residence at which time Darnyl Parker placed an order with CS–1 for one half of a kilogram of cocaine for Sayles and William Parker, and gave CS–1 $6,600, one-half of the total price, as an advance payment. Indictment Count XI; Complaint 73.

## DISCUSSION

1. *Defendants' Motion to Dismiss for Violation of Fed.R.Crim.P. 7(c)(1) and the Sixth Amendment.*

Defendants move to dismiss Counts I, II, and IV—XI as insufficiently pleaded in violation of Fed.R.Crim.P. 7(c)(1) and constitutional requirements for federal indictments. Defendants' Motion ¶ ¶ 13–30 (Count I); *Id.*, ¶ 36 (Count II); *Id.*, ¶ ¶ 55–57 (Count IV); *Id.*, ¶ ¶ 58–63, 65–69 (Count V); *Id.*, ¶ ¶ 70–75 (Count VI); *Id.*, ¶ ¶ 83–86 (Count VII); *Id.*, ¶ ¶ 87–88 (Counts VIII & IX); *Id.*, ¶ ¶ 97–98 (Count X); and *Id.*, ¶ 101 (Count XI).

An indictment is facially valid and constitutionally sufficient if it contains the elements of the offense charged, fairly informs a defendant of the charges against which he must defend, and enables a defendant to plead double jeopardy in bar of further prosecution. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Hernandez*, 980 F.2d 868, 871 (2d Cir.1992). Further, a federal indictment need only track the language of the statute which defines the charged offense and, if necessary to apprise the defendant of the nature of the accusation against him, state the time and place of the alleged offense in

approximate terms. *Russell v. United States,* 369 U.S. 749, 765, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Covino,* 837 F.2d 65, 69 (2d Cir.1988). Where an indictment tracks the statutory language, it should nevertheless provide "facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling, supra,* at 117–18, 94 S.Ct. 2887 (internal citation and quotation marks omitted).

■■■ The form of the indictment is governed by Fed.R.Crim.P. 7(c)(1) and requires that the indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." It is well settled that indictments which track the statutory language defining an offense are, as a general rule, sufficient under Rule 7(c) so long as its application to a particular defendant is clear. *United States v. Upton,* 856 F.Supp. 727, 739 (E.D.N.Y.1994). An indictment which complies with Rule 7(c)(1) satisfies the Sixth Amendment's requirement that the charge inform the defendant of the "nature and cause of the accusation." *Russell, supra,* at 763–64, 82 S.Ct. 1038. *Accord United States v. Walsh,* 194 F.3d 37, 44 (2d Cir.1999); *Upton, supra,* at 738.

■■■ A fair reading of the challenged counts shows they all track the language of the statutes upon which they are based and fairly apprise Defendants of the essential facts of the alleged offenses, as well as the nature and circumstances of the charges, as required by Fed.R.Crim.P. 7(c)(1) and the Sixth Amendment.

### A. Count I—Conspiracy to Violate Civil Rights.

Count I provides 41 paragraphs of specific facts upon which the alleged violation of 18 U.S.C. § 241 is based. As relevant, § 241 outlaws conspiracies "to injure, oppress, threaten, or intimidate any person in any state ... in the free exercise or enjoyment of any right or privilege secured ... by the constitution." In sum, Count I alleges Defendants agreed to violate the constitutional rights of supposed drug dealers. Count I further specifies Defendants acted with an intent to violate the Fourth Amendment right to be free of unreasonable searches and seizures, and the Fourteenth Amendment right to freedom from a deprivation under state law of liberty and property without due process. As such, the Count fairly tracks the language of § 241, and provides ample details of the way Defendants entered the conspiracy and acted in furtherance of it, and therefore fairly alleges the nature and circumstances of the offense charged. Count I is therefore not subject to dismissal upon the grounds asserted by Defendants.

### B. Count II—Conspiracy to Steal Government Property.

This count alleges Defendants conspired to commit a theft of government property in violation of 18 U.S.C. § § 641 and 371. As relevant, § 641 prohibits embezzlement, stealing, purloining, or knowing conversion of government property. Section 371 punishes any conspiracy to "commit any offense against the United States." Count II fairly tracks the language of both the statutes, and together with the reallegation of paragraphs 4—41 of the Indictment with references to Count I, as the required overt acts, it details the Defendants' entry into the alleged scheme and the circumstances of Defendants' plan to steal property owned by the Government. Count II thus contains a plain statement of the facts underlying the charge, and adequately apprises Defendants of the nature and circumstances of the offense against

them. As such, it is not subject to dismissal for insufficient pleading.

### C. *Count IV—Theft of Government Property.*

Count IV alleges Defendants violated 18 U.S.C. § 641 by stealing and converting money taken from Agent White on February 13, 2000. The count fairly tracks § 641, the substance of which is stated above, and therefore is sufficient on its face.

### D. *Count V—Hobbs Act Conspiracy.*

Count V charges Defendants conspired to obstruct, delay and affect interstate commerce by robbery, and extortion including claim of right in violation of the Hobbs Act, 18 U.S.C. § 1951, during the period November 10, 1999 through March 2, 2000 by taking money from a confidential source and a government undercover agent. As relevant, § 1951 states that any person who "in any way or degree obstructs, delays, or affects commerce ... by robbery or extortion or attempts or conspires so to do" violates the statute. 18 U.S.C. § 1951(a). Extortion is defined to include "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). As such, the count tracks the language of the statute, provides the general circumstances of the alleged offense, and there is no basis to dismiss it.

### E. *Count VI—Attempt to Violate the Hobbs Act.*

Count VI alleges an attempt to obstruct, delay and affect interstate commerce of robbery and extortion by taking money from the undercover agent on February 13, 2000 by threats of force, and consent induced by wrongful use of force or threats of force, from the agent who Defendants believed was a drug dealer. Here, again, the count substantially tracks the statute, as recited above, and provides reasonable specifics permitting Defendants a fair opportunity to defend. Accordingly, it is sufficient on its face and not subject to dismissal.

### F. *Count VII—Firearm Violation.*

In this count, Defendants are alleged to have knowingly, willfully, and unlawfully carried and possessed a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). As relevant, § 924(c) punishes any person "who, during and in relation to any crime of violence ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm". 18 U.S.C. § 924(c)(1)(A). The count specifically alleges the predicate crimes of violence as required by § 924(c) to be the alleged Hobbs Act violations alleged in Counts V and VI. Therefore, this count also tracks the statute, and provides fair detail as to nature and circumstances of the offense. Accordingly, there is no basis to dismiss.

### G. *Count VIII—Hobbs Act Violation.*

This count charges Defendant Darnyl Parker with an attempt to interfere with commerce by extortion of $1,000 from a confidential source in violation of 18 U.S.C. § 1951, the Hobbs Act. The relevant text of § 1951 is stated, *supra*, at 445. As such, Count VIII tracks the language of the statute and provides the essential facts upon which the charge is based. There is no basis to dismiss on the grounds asserted by Defendants.

### H. *Count X—Money Laundering.*

Count X charges Defendant Parker with knowingly and wilfully engaging, and attempting to engage, on February 2,

1999, in a financial transaction with a co-operating source involving the transfer and delivery of $2,500 represented to constitute proceeds of an unlawful drug transaction, in violation of 18 U.S.C. § 1956(a)(3)(A). As relevant, § 1956(a)(3)(A) prohibits conducting or attempting to conduct, with intent to carry on "specific unlawful activity," a financial transaction involving property, including currency, § 1956(c)(5), "represented to be the proceeds of specified unlawful activity." The statute defines specified unlawful activity to include illicit drug trafficking. §§ 1956(c)(7)(A); 1961(1). "Represented" is defined to include representations made by a law enforcement officer or another person at the direction of a federal investigator or prosecutor. § 1956(a)(3)(A). As such, the count tracks the elements of § 1956(a)(3)(A), and provides notice of the essential facts upon which the charge is based. Accordingly, the count is not subject to dismissal.

### I. *Count XI—Narcotics Conspiracy.*

This count charges Defendants Darnyl Parker, William Parker and Reno Sayles with a conspiracy to possess with intent to distribute 500 grams or more of cocaine between November 17, 1999 and March 2, 2000 in violation of 21 U.S.C. § 846. As relevant, § 846 prohibits conspiracies entered into for the purpose of violating 21 U.S.C. § 841(a)(1), by possession, distribution or possession with intent to distribute a controlled substance, including cocaine. As such, Count XI fairly tracks the statute, provides sufficient details of the basis of the charge, and is not subject to dismissal.

Accordingly, as to each count challenged by Defendants as insufficiently pleaded in violation of Fed.R.Crim.P. 7(c)(1) and the Sixth Amendment, the court finds the count substantially tracks the language of each statute and provides sufficient notice of the nature and circumstances of each charge. There is, therefore, no merit to Defendants' motion on this ground.

### 2. *Duplicity.*

Defendants move to dismiss Counts I, II, III, IV, V, VI, VII, VIII, and IX on the grounds they are duplicitous. Defendants' Motion, ¶¶ 14—30 (Count I); *Id.*, ¶¶ 46—49 (Count II); Defendants' Reply at 8–10 (Count III); Defendants' Motion, ¶¶ 55—57 (Count IV); *Id.*, ¶¶ 64—69 (Count V); *Id.*, ¶¶ 76—79 (Count VI), *Id.*, ¶¶ 92–93 (Counts VIII and IX); *see* generally Defendants' Memorandum at 12–13; Defendants' Reply at 4–13.

In particular, Defendants assert that because Count I alleges that the general purposes of the conspiracy were to "rob and steal money, property and drugs ... and to convert" such to their own use, Indictment Count I ¶ 3, the count charges three different offenses, and is therefore duplicitous. Defendants' Memorandum at 12; Defendants' Reply at 4. The same argument is raised by Defendants against Count II as it alleges, Indictment Count II ¶ 2, that Defendants conspired to commit an offense against the United States by stealing, purloining, and converting government funds and property. *Id.* Defendants similarly attack Counts III and IV in that these counts charge Defendants with stealing, purloining, and converting government property located at the West Avenue apartment on January 7, 2000 (Parker, Ferby, and Rodriguez) (Count III), and the $36,442 in government funds from Agent White on February 13, 2000 (Parker, Ferby, Rodriguez, and Hill) (Count IV), respectively. *Id.*

Further, Defendants move against Count V on the ground that the count alleges a violation of the Hobbs Act by conspiracy to obstruct, delay, and affect

commerce through robbery and extortion, and Count VI on the ground that this count alleges an attempted violation of the Hobbs Act through robbery, extortion and under color of official right. Defendants' Reply at 10–13. Finally, Defendants argue Count VIII, charging Defendant Darnyl Parker with a Hobbs Act violation, and Count IX, charging Parker with a second Hobbs Act violation, should be dismissed because these counts allege crimes committed through the use of force, threats of force, extortion, and under color of official right. *Id.* According to Defendants, as these Hobbs Act violation counts allege the respective offenses were committed through acts described as stealing, purloining,[4] converting, robbery, force, threats of force, extortion, and under color of right, the counts allege more than one crime and, hence, are duplicitous. Defendants' Memorandum at 12–13; Defendants' Reply at 4–13.

"An indictment is duplicitous if it joins two or more distinct crimes in a single count." *United States v. Aracri,* 968 F.2d 1512, 1518 (2d Cir.1992) (citing *United States v. Murray,* 618 F.2d 892, 896 (2d Cir.1980)); *United States v. Droms,* 566 F.2d 361, 363 (2d Cir.1977); *United States v. Gleave,* 786 F.Supp. 258, 264 (W.D.N.Y.1992), *rev'd on other grounds sub nom. United States v. Knoll,* 16 F.3d 1313 (1994). The test to be applied to determine whether there are two offenses or only one offense charged is "whether each provision in the count requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). A count of an indictment should only be ruled impermissibly duplicitous when the policy goals underlying this doctrine are offended, *i.e.,* "if a general verdict of guilty might actually conceal contrary findings as to different alleged crimes, or if an appropriate basis for sentencing is not provided." *United States v. Margiotta,* 646 F.2d 729, 732–33 (2d Cir. 1981).

As to conspiracy charges, it is established law that a conspiracy may be alleged to have multiple purposes. *Braverman v. United States,* 317 U.S. 49, 54, 63 S.Ct. 99, 87 L.Ed. 23 (1942) ("for conspiracy is the crime and that is one, however diverse its objects"). Thus, a conspiracy count alleging the conspiracy had multiple objectives is not duplicitous. *United States v. Murray,* 618 F.2d 892, 896–97 (2d Cir.1980) ("allegation in single count of conspiracy to commit several crimes is not duplicitous because conspiracy is one crime despite diverse objects"). Further, a count of an indictment is not duplicitous if the allegation states that the offense has been committed in more than one way or through different means. *See United States v. Schwartz,* 899 F.2d 243, 246 (3rd Cir.1990), *cert. denied,* 498 U.S. 901, 111 S.Ct. 259, 112 L.Ed.2d 217 (1990) (bank fraud); *United States v. Berardi,* 675 F.2d 894, 897 (7th Cir.1982) (obstruction of justice); *United States v. Droms, supra,* at 363 (falsifying financial statements to IRS); *United States v. Carson,* 464 F.2d 424, 435 (2d Cir.) (conspiracy committed by alternate means not duplicitous), *cert. denied,* 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219 (1972); *United States v. Wesley,* 918 F.Supp. 81, 86 (W.D.N.Y.1996) (receipt or possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1)).

Where, therefore, the statute defining the offense defines disjunctively, *i.e.,*

---

4. "to take away for one-self: appropriate wrongfully and often under circumstances that involve a breach of trust." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (1986) at 1846.

through the use of the conjunctive "or," the means by which the statute may be violated, it is permissible to allege the offense in the indictment conjunctively, *i.e.*, through the use of the conjunctive "and." *United States v. Astolas*, 487 F.2d 275, 279 (2d Cir.1973) (citing *United States v. Conti*, 361 F.2d 153 (2d Cir.1966), *rev'd on other grounds*, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968)), *cert. denied*, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974). In such a case, a conviction will be sustained "if the evidence justifies a finding that the statute was violated in any of the ways alleged." *Id., see also Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *United States v. Burton*, 871 F.2d 1566, 1572 (11th Cir. 1989) (issue presented under 18 U.S.C. § 641); *United States v. Hicks*, 619 F.2d 752, 758 (8th Cir.1980) (noting rule is "well known" and stating that upon trial court usually instructs jury in the "disjunctive form used in the statute."); *United States v. Viserto*, 596 F.2d 531, 538 (2d Cir.1979) (charge of distribution and possession with intent to distribute in single count alleging violation of 21 U.S.C. § 841(a) upheld); *United States v. Wyant*, 576 F.2d 1312, 1319 (8th Cir.1978) (quoting *United States v. Conti, supra.*); *United States v. UCO Oil Company*, 546 F.2d 833, 837 (9th Cir. 1976).

Indeed, charging in the disjunctive "would make the indictment bad for uncertainty, so it is necessary to connect them [the actions of defendant alleged to violate the statute] with the conjunctive 'and' before the evidence can be admitted as to more than one act." *Joyce v. United States*, 454 F.2d 971, 977 (D.C.Cir.) *cert. denied*, 405 U.S. 969, 92 S.Ct. 1188, 31 L.Ed.2d 242 (1972). As the court in *Joyce, supra*, stated, "[t]his favors the accused for he will be charged with only one offense and a judgment on a general verdict of guilty upon that count will bar further prosecution on all matters alleged therein." *Id.*

■■■ In Counts I and II, the allegations charging that the object of Defendants' conspiracy was "to rob and steal" from its intended victims, Indictment, Count I ¶ 3; Count II, ¶ 3, are permitted as conspiracies may have multiple objectives, *Braverman, supra*, and as stated, Discussion, *supra*, at 447–48, an indictment may allege conjunctively what a statute defines disjunctively as the prohibited means by which the offense may be accomplished. Here, as discussed, Discussion, *supra*, at 444, each count of the Indictment challenged by Defendants, fairly tracks the language of the respective statutory provision upon which the count is alleged to be based.

Specifically, Count I alleges that Defendants, while acting under color of state law, conspired to violate the constitutional rights and privileges of persons within the City of Buffalo during the period between November 10, 1999 and March 2, 2000 through injury, oppression, threats, and intimidation. The allegations relating to this count describe a scheme by which the Defendants, acting as police officers, sought to rob and steal from suspected "Jamaican" drug dealers their illegal drugs and drug trafficking proceeds after being identified to Defendants by a known drug trafficker, and, in furtherance of the conspiracy, carried out a warrantless entry into, and theft from, a supposed drug stash house, and a subsequent theft of suspected drug money from an undercover agent believed by Defendants to be such for a "Jamaican" drug dealer. Indictment Count I, ¶¶ 3–41. Count II, based on the general allegations set forth with Count I, charges Defendants with a conspiracy to steal, purloin, and convert government property, namely the valuables and cash

planted by investigators at the undercover stash house on West Avenue taken by Defendants on January 7, 2000, and the cash in the possession of the undercover agent posing as a drug dealer taken by Defendants on February 13, 2000, in violation of 18 U.S.C. § 641.

As stated, a conspiracy count is not duplicitous because it alleges that the conspiracy had multiple objects. *Braverman, supra; Murray, supra.* Further, to the extent that Counts I and II charge in the conjunctive how the objective of the conspiracies charged were to be accomplished, such allegations properly allege the alternative means by which the defined offense may be committed. *Aracri, supra; Carson, supra.* Accordingly, neither Count I nor Count II is duplicitous for the reasons asserted by Defendants.

 Counts III and IV charge thefts of government property, namely the cash taken from the supposed West Avenue stash house on January 7, 2000, and from Agent White on February 13, 2000, in violation of 18 U.S.C. § 641. Defendants attack these counts as duplicitous in that, according to Defendants, because the counts allege Defendants stole, purloined, and converted the cash, the counts each charge at least two distinct crimes. Defendant's Reply at 8.

As relevant, 18 U.S.C. § 641 prohibits embezzlement, stealing, purloining, or "knowingly" converting any "money" or "thing of value of the United States." Count III charges that Defendants Parker, Ferby, and Rodriguez, on January 7, 2000 "did knowingly, willfully, and unlawfully steal, purloin, and convert to their own use, and the use of another, certain property and things of value of the United States having a value in excess of $1,000" described as a gold watch and ring. Indictment at 16. Count IV alleges identical conduct by all four Defendants with re-

spect to the taking of cash from Agent White on February 13, 2000. Indictment at 16–17. Thus, each count tracks the language of § 641, and alleges, conjunctively, the alternative means by which the offense as defined in the statute may be committed.

 That a count in an indictment asserts, as stated in the relevant statute, that the offense may be committed in a variety of ways does not render the count duplicitous. "A duplicitous indictment, which alleges several offenses in the same count, must be distinguished from 'the allegation in a single count of the commission of a crime by several means.'" *Aracri, supra,* at 1517 (quoting *Murray, supra,* at 896). "The latter is not duplicitous." *Id.* Moreover, even if the conduct alleged could have been charged in separate counts, the fact that such conduct is alleged in a single count does not render the indictment duplicitous where the indictment tracks the elements of the offense as defined in the statute. *United States v. Zolli,* 51 F.R.D. 522, 527 (S.D.N.Y.1970) ("[a duplicity] inquiry is necessary only where the indictment is not framed in the statutory language.") In *Zolli,* the count challenged as duplicitous charged defendants with a violation of 18 U.S.C. § 1503—intimidation of a federal witness and obstruction of justice. Rejecting defendants' contention that the separate clauses of the statute describing witness intimidation and obstruction of justice stated separate offenses, the court found that § 1503 established the offense of obstruction of justice through the alternative means as defined in the statute and, accordingly, such means were properly included in a single count. *Zolli, supra,* at 528.

Nor is there any merit to Defendants' contention regarding Counts III and IV that as the alternative means by which a violation of 18 U.S.C. § 641 may be accom-

plished, *i.e.*, to steal, purloin, or convert, commonly recognized forms of the crime of theft, are, included as elements of the underlying offense defined by § 641, alleging them in a single count renders the count duplicitous. Defendants' Memorandum at 12–13. To assert that an element of a crime is a separate offense merely because it incorporates a common law crime does not make the element itself an offense which may be separately charged in an indictment. Rather, it remains an element regardless of whether the crimes are defined by the statute to constitute, as here, alternative means by which the offense, as defined by the statute, may be committed. Moreover, § 641 does not seek to punish the embezzling, stealing, purloining or conversion as crimes *per se*, rather, it prohibits any such form of theft of government property. It is black letter law that a crime is defined by its elements. Black's Law Dictionary, 6th ed. (West 1990) at 520 (defining "elements" as "[t]hose constituent parts of a crime which must be proved by the prosecution to sustain a conviction."). Defendants' argument that the alternative means of committing the crime of violating § 641, as defined in the statute, brings to mind the observation, attributed to Lincoln, that calling a dog's tail a leg will not thereby cause the dog to have five legs as the dog's tail remains a tail and not a dog's leg no matter what it is called. Defendants can therefore no more transmute an element of a crime into a separate offense by referring to it as such than could calling the dog's tail a leg in Lincoln's aphorism change the number of legs on the dog.

In *United States v. Hill,* 835 F.2d 759 (10th Cir.1987), relied on by Defendants, Defendants' Reply at 8–9, the indictment, charging a violation of 18 U.S.C. § 641, only alleged defendant, an erratic cooperating witness, had stolen drug buy money from the DEA, and failed to conjunctively allege a theft by conversion of the subject government property; however, the evidence at trial proved only that defendant converted the buy money after receiving it from the agency. *Hill, supra,* at 763–64. Finding a prejudicial variance, the court refused to affirm defendant's conviction upon the indictment. *Id.* As such, *Hill* provides no support for Defendants' contention that the challenged counts in this case are duplicitous. Rather, by implication, the case holds that a conjunctive pleading of the alternative forms of theft defined by § 641 is proper, and indeed. necessary, to accommodate potential variations in the Government's evidence at trial. Accordingly, where, as here, the indictment charges an offense the commission of which the statute provides may be accomplished by alternative means, as defined elements of the offense, the duplicity doctrine is inapplicable. *See Zolli, supra,* at 527.

Defendants' attacks on Counts V, VI, VIII, and IX of the Indictment for duplicity, Defendants' Memorandum at 12; Defendants' Reply at 10–13, fail for the same reasons. Count V charges all Defendants with a conspiracy to violate the Hobbs Act by robbery and extortion as defined in 18 U.S.C. § 1951 based on an agreement to unlawfully take money from CS–1 and Agent White. Count VI charges all Defendants with violating § 1951 by taking money from Agent White on February 13, 2000 by force and consent obtained under color of right. Counts VIII and IX charge Defendant Parker with violating § 1951 in connection with two takings of money from CS–1, the confidential source with whom Parker had been dealing. However, as discussed, a conspiracy may be alleged to have multiple purposes and offenses generally may be alleged to have been committed by alternate means without becoming duplicitous.

Defendants argue that Counts V, VI, VIII, and IX should be found to be duplicitous based on *United States v. Starks,* 515 F.2d 112 (3d Cir.1975). Defendants' Reply at 10–13. In *Starks,* the indictment charged, in a single count, both conspiracy to violate the Hobbs Act and an attempt to do so. *Starks, supra,* at 116. Relying on *United States v. Jacobs,* 451 F.2d 530, 534 (5th Cir.1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972), the court in *Starks* stated that the Hobbs Act enacted four separate offenses—robbery, extortion, attempted robbery or extortion, and conspiracy to commit robbery or extortion. *Starks, supra,* at 115 n. 4. As the court in *Starks* found the challenged count charged both a conspiracy and an attempted violation of the statute, the court held it was improper, and that the government should have been required to elect upon which form of the offense under 18 U.S.C. § 1951 it requested a verdict, or the indictment should have been dismissed. *Id.*

However, in the case at bar, Defendants are charged with conspiracy to violate § 1951 as to "Jamaican" drug dealers in Count V, and with an attempt to violate § 1951 in Count VI as to particular supposed "Jamaican" drug dealer, Agent White. Moreover, Count VIII charges Defendant Darnyl Parker with an attempt to violate § 1951 as to CS–1 on a particular occasion and, in Count IX, Parker is charged with a second attempt to violate § 1951 as to CS–1 on a different occasion. In the instant case, as the alleged § 1951 conspiracy, Count V, and the three attempted violations of § 1951 (Counts VI, VIII & IX) are each stated in separate counts, *Starks* is inapposite to Defendants' motion. Additionally, as each of these counts tracks the language of the respective statute, § 1951, it is not duplicitous. *Zolli, supra.* Finally, as discussed, an indictment which charges conjunctively what the statute prohibits disjunctively, is not duplicitous. Discussion, *supra,* at 447–48. Thus, there is no merit to Defendants' contention that Count V, VI, VIII, and IX are subject to dismissal on duplicity grounds.

■ Even assuming any of the counts challenged by Defendants were found to be duplicitous such fact does not require dismissal as the remedy of a special jury instruction to assure unanimity will avoid any prejudice to Defendants. *United States v. Weller,* 238 F.3d 1215, 1219–220 (10th Cir.2001) (rejecting argument that 18 U.S.C. § 656 charge of embezzlement and willful misapplication are duplicitous and approving special instruction requiring jury be unanimous on either means of committing "a single offense."); *Droms, supra,* at 362 n. 1 ("Duplicity, of course, is a rule of pleading and would in no event be fatal to the count."); *Bins v. United States,* 331 F.2d 390, 393 (5th Cir.1964) (recognizing "approved procedure for submitting duplicitous counts [to jury] by limiting instructions"); *Gleave, supra,* at 265 (noting use of special jury instruction requiring unanimity on specific evidence of culpability to guard against potential jury confusion where defendants claimed duplicity).

Further, should the trial judge determine, after hearing all of the Government's proof, that there nevertheless exists a serious risk of jury confusion, another remedy would be to require the Government to elect among the alternative theories of culpability presented rather than to dismiss that count of the indictment. *United States v. Vario,* 1989 WL 253781 *8 (E.D.N.Y.1989) (an appropriate remedy when a count is duplicitous is to have the government elect the charge contained in the count upon which it will rely); *United States v. Kearney,* 444 F.Supp. 1290, 1295 (S.D.N.Y.1978) ("Unless the defects inher-

ent in a duplicitous count have not been obviated by the contents of a bill of particulars or appropriate jury instructions ... the appropriate remedy for a duplicitous count is to require the government to elect one of the multiple offenses embraced therein on which to proceed.") (citing cases).

Finally, based on the extensive discovery provided to Defendants regarding the expected evidence at trial as well as the details of the background of the investigation as recited in the Indictment, Defendants have been given adequate notice of the basis of the Government's case as to each count. Additionally, Discussion, *supra*, at 451, special instructions to the jury can avoid the risk that a finding of guilt on any offenses claimed by Defendants to be included improperly within a single count, will lack unanimity. Thus, even if it is assumed that any duplicity exits regarding any count of the Indictment as challenged by Defendants, such will not violate, in this case, the policies underlying the duplicity doctrine requiring dismissal of the counts prior to trial. *See Margiotta, supra*, at 733 (single count containing several allegations which could have been separately stated as offenses not duplicitous unless failure to do so "risks unfairness to the defendant.").

Here, based on the detailed allegations contained in the Indictment, the extensive discovery available to Defendants, and the availability of special instructions to the jury to assure a unanimous verdict, no such unfairness to Defendants will result if the Government is not required to separately allege the acts which Defendants assert render the counts duplicitous.[5] Accordingly, Defendants' attack on the Indictment based on any asserted duplicity is without merit.

### 3. *Failure to State an Offense.*

Defendants also seek to dismiss Counts I, II, and IV—XI of the Indictment on the ground that upon the facts as stated, the counts fail, as matter of law, to establish the respective offenses charged. Defendants' Motion, ¶¶ 6–12 (Count I); *Id.*, ¶¶ 36–39, ¶¶ 42–45, ¶¶ 48–49 (Count II); *Id.*, ¶¶ 50–54 (Count IV); *Id.*, ¶¶ 58–63 (Count V); *Id.*, ¶¶ 70–75 (Count VI); *Id.*, ¶¶ 80–82 (Count VII); *Id.*, ¶¶ 87–91 (Counts VIII & IX); ¶¶ 94–96, ¶ 98 (Count X); *Id.*, ¶¶ 99–100 (Count XI.)

### A. *Count I—Conspiracy to Violate § 241.*

Defendants assert that Count I should be dismissed as, based on the facts stated in the Indictment, Defendants could not as a matter of law have violated any constitutional right of Agent White, the person whom Defendants believed was a drug dealer when they took the alleged action against him on February 13, 2000. Indictment, ¶ 33. Defendants' Memorandum at 13–26; Defendants' Reply 15–24. Specifically, Defendants contend that (i) as the undercover agent, as part of the investigation, expected Defendants to stop him and voluntarily handed over the money at Defendants' alleged request, the encounter was consensual and therefore could not

---

5. As the Government has not asserted that any duplicitousness in the Indictment is subject to the single continuing scheme exception available in this circuit, *see Aracri, supra*, at 1518 (acts capable of sustaining separate counts may be included in single count "if those acts could be characterized as part of a single continuing offense.") (quoting *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990), rejecting Fifth Circuit law as stated in *Bins, supra*, at 393 ("any acts capable of being charged as separate counts must be alleged in separate counts.")), the court will not address whether the exception may be applicable to any of the counts challenged by Defendants.

constitute a seizure within the Fourth Amendment; (ii) no unlawful search and seizure occurred as, based on the facts alleged in the Indictment, Defendants had probable cause to stop the agent whom they reasonably believed to be a drug dealer and seize what they reasonably believed to be proceeds of drug trafficking; (iii) as the money reasonably believed by Defendants to be drug trafficking proceeds seized from the undercover agent was subject to forfeiture and as under the relation back doctrine there was no lawful ownership interest in the money by the agent or government, it was thus legally impossible for Defendants to commit a theft of government property as to the money; and (iv) any corrupt intent by Defendants, as alleged in the Indictment, does not vitiate Defendants' reasonable objective belief that they were acting with probable cause thereby rendering it impossible that Defendants acted in violation of the agent's constitutional rights, relying on *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) and *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Defendants' Memorandum at 14–20. There are several errors in Defendants' contentions.

Under federal law, intentional violations of constitutional rights are subject to two forms of criminal prosecution. 18 U.S.C. § 242 prohibits willful violations of the constitutionally protected rights of persons and discrimination based on race or alien status. 18 U.S.C. § 241, prohibiting any conspiracy to violate federal constitutional rights, the offense of which Defendants are charged, is considered the companion statute to § 242 and is subject to similar requirements of proof as to the element of willfulness set forth in § 242. *Screws v. United States,* 325 U.S. 91, 117, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (Rutledge, J.) (concurring op.); *United States v. McClean,* 528 F.2d 1250, 1255 (2d Cir.1976) (ex-

tortionate police seizure of money from drug dealers pursuant to a conspiracy "would also have constituted a violation of § 241").

 It is fundamental that when law enforcement officers commit actionable wrongs against individuals, such conduct may constitute a violation of the person's constitutional rights even though if the same action were taken by a wrongdoer not acting under color of law the conduct would not constitute such a violation. *Bivens v. Six Unknown Agents,* 403 U.S. 388, 391–92, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). "An agent acting—albeit unconstitutionally—in the name of the [state] possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own." *Id.* at 392, 91 S.Ct. 1999 (citing cases). Thus, where one acting under color of state law commits a crime against an individual, which impairs a constitutionally protected personal or property interest, such conduct may be prosecuted under 18 U.S.C. § 242. *See United States v. Lanier,* 520 U.S. 259, 261, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (conviction of state judge under § 242 for rape of employees may be sustained if defendant had fair warning that conduct subject to criminal liability under § 242 as violating victim's liberty interest right to be free from assaults without due process). The fact that a victim of police illegality may also be guilty of criminal behavior, which motivated the investigative activity, does not disentitle such person to the protection of the Fourth and the Fourteenth Amendment, and such illegality may constitute a violation of § 242. *Irvine v. California,* 347 U.S. 128, 137, 74 S.Ct. 381, 98 L.Ed. 561 (1954) ("If the officials have willfully deprived a citizen of the United States of a right or privilege secured to him by the Fourteenth amendment, that being the right to be secure ... against

unreasonable searches ... their conduct may constitute a federal crime under ... [18 U.S.C. § 242]") (warrantless search and seizure by police of home of suspected gambler); *McClean, supra,* at 1254–55 (conviction for conspiracy under 18 U.S.C. § 371 to violate 18 U.S.C. § 242 and for violation of § 242 upheld where police extorted from drug dealers proceeds of drug trafficking). *See also United States v. Alonso,* 740 F.2d 862, 872 (11th Cir.1984) (conviction under 18 U.S.C. § 242 for violation of due process rights of persons with ownership interests in drug trafficking proceeds upheld where police fraudulently removed funds from police department property room) (citing *McClean, supra.*).

■■■ Willful conduct taken by officers with the specific intent to violate rights made specific by the provisions of the Constitution or decisions of the courts interpreting them will support a conviction under § 242. *Screws, supra,* at 103–04, 65 S.Ct. 1031. "The fact that the defendants may not have been thinking in constitutional terms is not material *where their aim* was not to enforce local law but to deprive a citizen of a right and that right was protected by the Constitution." *Id.* at 105, 65 S.Ct. 1031 (emphasis added). Thus, if the evidence demonstrates that a police officer did not act with the purpose of enforcing the law but, rather, with a criminal intent and thereby willfully violated a federally protected right, criminal liability under § 242 may attach. If criminal liability under § 242 arises based on such circumstances, as a completed offense, it follows that, where an officer conspires with similar intent to violate such protected rights, criminal culpability also arises under § 241. *United States v. Guest,* 383 U.S. 745, 759, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966) (where "predominant purpose of the conspiracy is to impede or prevent exercise of [a constitutional right]," culpability under § 241 attaches regardless of defendant's other motives).

■■■ It is well established that a conspiracy charge does not require a showing that the unlawful objectives of the conspiracy be accomplished. *United States v. Feola,* 420 U.S. 671, 694, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). "The law of conspiracy identifies the agreement to engage in a criminal venture as an event of sufficient threat to social order to permit the imposition of criminal sanctions for the agreement alone ... regardless of whether the crime agreed upon is actually committed." *Id.* (*citing United States v. Bayer,* 331 U.S. 532, 542, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947)). "Criminal intent has crystallized, and the likelihood of actual, fulfilled commission warrants preventive action." *Feola,* at 694, 95 S.Ct. 1255; *United States v. Trapilo,* 130 F.3d 547, 553 n. 9. (2d Cir. 1997) (*quoting United States v. Everett,* 692 F.2d 596, 600 (9th Cir.1982) ("[T]he crime of conspiracy is complete upon the agreement to violate the law, ... and is not dependent upon the ultimate success or failure of the planned scheme."), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930(1983)).

■■■ Further, the crime of conspiracy does not require that the object of the unlawful agreement be capable of fruition. "[T]he impossibility that the defendants' conduct would result in consummation of the contemplated substantive crime is not persuasive or controlling." *United States v. Meyers,* 529 F.2d 1033, 1037 (7th Cir.), *cert. denied,* 429 U.S. 894, 97 S.Ct. 253, 50 L.Ed.2d 176 (1976). Moreover, a mistaken belief by alleged conspirators as to the existence of facts which provide the basis for federal prosecution is no defense to a conspiracy charge to commit the substantive offense which is the object of the conspiracy. *Feola, supra,* (holding that knowledge of the true identity of victim as

a federal officer unnecessary to an indictment for conspiracy to assault a federal officer); *United States v. Jannotti*, 673 F.2d 578, 591 (3d Cir.) (*en banc*) (upholding Hobbs Act conspiracy convictions based on receiving money to influence official conduct from undercover agents posing as foreign business persons seeking favorable official action using government funds), *cert denied*, 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982); *United States v. Rose*, 590 F.2d 232, 235 (7th Cir.1978) (upholding conviction for conspiracy to engage in interstate transportation of stolen goods defendants erroneously believed to be stolen by undercover agents who never intended to engage in the planned theft), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979); *Craven v. United States*, 22 F.2d 605, 609 (1st Cir.1927) (sustaining conviction for conspiracy to illegally import foreign liquor despite defendants' erroneous beliefs that liquor was of foreign origin). "It is ... irrelevant that the ends of the conspiracy were from the very inception of the agreement objectively unattainable." *Jannotti, supra*, at 591 (citing cases). *But see Ventimiglia v. United States*, 242 F.2d 620 (4th Cir.1957) (mistaken belief that person to whom defendants made payments was a union representative negated conviction for conspiracy to violate 29 U.S.C. § 186(a) prohibiting employer payments to union representative).

While a legal impossibility that a defendant could have intended to commit an alleged unlawful objective may, in limited circumstances, constitute a defense to a conspiracy charge, no facts in the Indictment support a finding that it was legally impossible for Defendants to conspire with the intent to violate federal constitutional rights. "Unless a legal impossibility arising at the time of the act [which is the object of the conspiracy] relates back to cover the intent which precedes the substantive act and makes it [the substantive act] non-criminal ... [such impossibility of intent] does not apply to the inchoate crime of conspiracy ...." Perry E. Mann, Jr., Case Comment, IMPOSSIBILITY IN CONSPIRACY, 15 Wash. & Lee L.Rev. 122, 127 (1958). *See also* DEVELOPMENTS IN THE LAW, CRIMINAL CONSPIRACY, 72 Harv. L.Rev. 922, 944–45 (1959) (noting that "unless unlawful intent [going to the object of the conspiracy] is legally impossible, an anti-social combination exists.") (citing, as an example of such legal impossibility, *Foster v. Commonwealth*, 96 Va. 306, 31 S.E. 503 (1898) (boy under fourteen cannot have the legal intent to commit rape)); *see also State v. Moretti*, 97 N.J.Super. 418, 235 A.2d 226 (1967) (finding conspiracy to perform illegal abortion on non-pregnant woman not legally impossible of completion). The Second Circuit has stated that even a legal impossibility as to the objectives of the conspiracy does not invalidate a federal conspiracy charge. *See Trapilo, supra*, ("Where ... an indictment alleges conspiracy, legal impossibility affords a conspirator no defense.") (*citing United States v. Feola, supra*, at 693, 95 S.Ct. 1255 (1975)).

Here, Count I alleges a conspiracy to violate the Fourth Amendment and Fourteenth Amendment due process rights of "persons," including drug dealers located in Buffalo, New York in violation of 18 U.S.C. § 241. As noted, § 241 outlaws any conspiracy whose purpose is "to injure, oppress, threaten, or intimidate any person ... in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." There is nothing on the face of Count I upon which it can be found that the targeted victims of the conspiracy were persons to whom Fourth and Fourteenth Amendment rights did not attach or that some legal impediment prevented De-

fendants from forming an intent to violate such rights as alleged.

█ Defendants do not dispute that the Jamaican drug dealers whom Defendants allegedly intended to act against, and Agent White, are persons who also enjoyed such protected rights. Thus, it is not legally impossible that Defendants could intend to willfully violate federal constitutional rights of such drug dealers and Defendants' contention that Count I is defective as Defendants were led to mistakenly believe the person whose rights they are alleged to have violated, alleged by the Indictment as part of the conspiracy, Indictment Count I, ¶¶ 28–30, was a supposed drug dealer, is irrelevant. Even drug dealers are considered, for purposes of sections 241 and 242, as persons who retain constitutional rights, capable of being violated in the manner as alleged in the Indictment. *Irvine, supra*, at 137, 74 S.Ct. 381 (illegal entry into home of gambler to place hidden microphone); *McClean, supra*, at 1254 (police officers' extortion of money from drug dealers, and conspiracy to violate § 242, found to be actions under color of state law "without adhering to the processes due under the law."). Although the actions of Defendants in seizing Agent White on February 13, 2000 are alleged as part, or in furtherance, of the conspiracy, Indictment Count I, ¶ 33, the object of the conspiracy, as found by the Grand Jury, was to violate the rights of drug dealers operating in the Buffalo area. Indictment Count I, ¶ 3. Defendants do not dispute that § 241 does not require the pleading of any overt acts. *See United States v. Skillman*, 922 F.2d 1370, 1375 (9th Cir. 1990) (citing cases). Accordingly, Defendants' mistaken beliefs as to the identity of Agent White, including the asserted existence of probable cause to stop Agent White, is irrelevant to the legal viability of Count I.

█ Moreover, contrary to Defendants' contention, Defendants' Memorandum at 16–17, the fact that proceeds of drug activity are subject to seizure and forfeiture is not controlling. *McClean, supra*, at 1255. Even if some of the property stolen by Defendants is considered to be contraband, a victim of police extortion is "entitled to have the status of the seized property determined by due process." *Id.* Further, as discussed, Discussion, *supra*, at 454, as Defendants are charged with conspiracy, that the property may have been subject to forfeiture if the circumstances were as Defendants argue is irrelevant to the charged § 241 conspiracy violation as the object of a conspiracy need not actually be completed or capable of completion in order to support a conviction.

█ Defendants' argument, Defendants' Memorandum at 15, that on the face of the Indictment no violation of § 241 could be found because Defendants had probable cause to effect a warrantless arrest, and an incidental seizure of the perceived drug money of the suspected drug dealer was therefore constitutionally permissible, is equally without substance. First, Defendants' claim that they acted against Agent White with probable cause only presents a factual question for trial— whether when they entered into the alleged conspiracy Defendants intended to violate the constitutional rights of suspected Jamaican drug dealers as alleged—as the object of the conspiracy is stated to be the violation of the Jamaican drug dealers rights, not Agent White's. Indictment Count I, ¶ 3. How Defendants may have perceived Agent White's actual identity is therefore irrelevant. As discussed, such identity is not an element of § 241, and it is sufficient if the indictment alleges that "the intended future conduct [defendants]

agreed upon include all of the elements of the substantive offense." *Jannotti, supra,* at 592. Moreover, as noted, Count I alleges that the purpose of the conspiracy was not solely to violate Agent White's rights, while acting as a Jamaican drug dealer, but, rather, those of any Jamaican drug dealers identified to Defendants by CS–1. As discussed, *supra,* whether the specific constitutional protections sought to be abridged by Defendants' conspiracy, as alleged in the Indictment, were in fact ultimately violated is irrelevant to the § 241 conspiracy charge. In this case, Count I directly alleges that Defendants conspired to violate the specified Fourth Amendment and Fourteenth Amendment due process constitutional rights of individual persons, *i.e.* the Jamaican drug dealers, and that, as evidence of their corrupt intent, Defendants carried out this object against Agent White while he posed as such a drug dealer. Therefore, Defendants' assertions that when they acted against him Defendants had probable cause to arrest the undercover agent is irrelevant to whether they are properly alleged to have conspired with the requisite intent to violate federal civil rights of those within their corrupt purpose, as described in the Indictment.

The question, in addition to the other factual questions presented by the allegations in the Indictment, thus presented, under Count I of the Indictment, for trial is whether, when their alleged conspiracy was formed, Defendants intended to violate federal constitutional rights. *Screws, supra,* at 105, 65 S.Ct. 1031. As Defendants are not charged with a violation of § 242, their mistaken beliefs regarding the actual identity of the undercover agent when they took action against him, as alleged, and the subsequent conduct in relation to the stop, presents an issue of fact going to the ultimate question of whether there was at the outset a conspiracy in violation of § 241, and the nature of Defen-

dants' intentions at the time of its formation. *See McClean, supra,* at 1255 (evidence that "property taken for official rather than private use" relevant to defendant's intent to violate constitutional rights).

Even if it were supposed, for the purposes of discussion, that Count I alleges circumstances, as stated in the Indictment, that may have caused a reasonable officer to believe the circumstances created probable cause to effect an arrest of the supposed drug dealer, Count I alleges Defendants did not act on such belief. Rather, it charges that Defendants intended to rob, steal or extort money from the intended victims of their scheme, and thereby intended to specifically violate the victims' constitutional rights, regardless of the existence of probable cause to take official action against the victims. In short, the allegations in Count I require proof that Defendants intended to violate the victims' constitutional rights, thus negating any basis to believe, for the purposes of the instant motion, Defendants intended to act, or eventually did act, based on reasonable belief that probable cause existed and that no such violation could therefore have been intended or effected.

Put another way, an indictment alleging a violation of either 18 U.S.C. § 241, or § 242, against a police officer asserts that where a police officer, acting in his official capacity, intended to commit a crime against a person, the officer did not, as to the alleged conduct, act in the reasonable belief that he was not violating the person's constitutional rights. By charging Defendants with a violation of § 241, the Indictment alleges Defendants agreed to act with the specific intent to violate a person's constitutional rights. *Screws, supra,* at 103–104, 65 S.Ct. 1031. "Those who decide to take the law into their own hands ... plainly act to deprive a prisoner

of the trial which due process of law guarantees him. And such a purpose need not be expressed; it may ... be reasonably inferred from all the circumstances attendant on the act." *Screws, supra,* at 106, 65 S.Ct. 1031. The intent required to support a charge of conspiracy to violate federal constitutional rights in violation of § 241 satisfies the requirement that a defendant act with a specific intent to violate the constitutional rights protected by the statute. *United States v. Guest, supra,* at 753–54, 86 S.Ct. 1170 (internal citations omitted). Defendants' contention that on its face Count I fails to state an offense in violation of § 241, accordingly, is without basis.

■■■ Additionally, it is generally held that an accusatory instrument valid on its face may not be dismissed based on insufficient evidence. *United States v. Williams,* 504 U.S. 36, 54, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992); *United States v. Casamento,* 887 F.2d 1141, 1182 (2d Cir. 1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990); *United States v. Contreras,* 776 F.2d 51, 54 (2d Cir.1985). "There is no such thing as a motion for summary judgment in a criminal case." *Russell v. United States,* 369 U.S. 749, 791, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) (Harlan, J. dissenting). *See also* Fed.R.Crim.P. 12(b)(1) ("[a]ny defense ... which is capable of determination without the trial of the general issue may be raised before trial by motion."); *United States v. Knox,* 396 U.S. 77, 83 n. 7, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969) (question of whether defendant made alleged statement wilfully is one for trial) (stating that Fed.R.Crim.P. 12(b)(1), "indicates that evidentiary questions of this type should not be determined on such a motion."); *United States v. Alfonso,* 143 F.3d 772, 776–77 (2d Cir.1998) (reversing as "premature" trial court's dismissal of indictment for failure to allege

facts sufficient to establish jurisdictional element of charged Hobbs Act violation). "Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial ..., the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Id.*

■■■ Defendants' assertions, including that no constitutional violation occurred because the Indictment fails to allege facts showing the encounter between Defendants and Agent White was other than a consensual one, Defendants' Reply at 2, or that Defendants acted based on probable cause, Defendants' Memorandum at 15, as discussed, Discussion, *supra,* at 452–58, are irrelevant, for purposes of whether Count I sufficiently pleads an offense, to whether they conspired with the intent to violate a person's constitutional rights as alleged in Count I. *Screws, supra,* at 105, 65 S.Ct. 1031. However, even if such arguments were found to be relevant on the question of Defendants' guilt, the arguments presented by Defendants as grounds to dismiss Count I constitute evidentiary matter which cannot be resolved without trial of the general issue, Fed. R.Crim.P. 12(b)(1), as the question of whether Defendants conspired with the intent to willfully violate the constitutional rights of any person is the "general issue" which arises from the Indictment's allegations. Indictment Count I ¶ 2 (Defendants "did wilfully conspire ... to injure, oppress, threaten and intimidate persons ... in the free exercise and enjoyment [of their constitutional rights]"). As such, Defendants' contentions must await trial.

Defendants also rely on *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) and *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) to support their contention that the Indictment alleges no viola-

tion of § 241 was committed. Defendants' Memorandum at 19–20. In *Graham*, the Supreme Court held that § 1983 civil actions against police officers in cases involving alleged use of excessive force were to be judicially considered as claiming a violation of the Fourth Amendment. *Graham, supra*, at 394–95, 109 S.Ct. 1865. The Court held that in determining such claims, as the issue turns upon the Fourth Amendment's standard of reasonableness, the question is whether in all of the circumstances a police officer's use of force was "objectively reasonable," thus precluding liability based solely on a retrospective evaluation of the circumstances which confronted the officer regardless of the officer's subjective beliefs. *Id.* at 397, 109 S.Ct. 1865. In *Whren*, the Court noted that as the Fourth Amendment renders reasonable "certain actions to be taken in certain circumstances, whatever the subjective intent" of the officer, the officer's subjective intent in effecting a traffic stop is irrelevant to the validity of the stop under the Fourth Amendment. *Whren, supra*, at 814, 116 S.Ct. 1769. Rather, the Court found such stops must be tested under the Fourth Amendment's protection against unreasonable seizures. *Whren*, 517 U.S. at 812, 116 S.Ct. 1769.

Based on these holdings, Defendants argue that as the Fourth Amendment violation alleged in relation to Defendants' encounter with Agent White was, on the face of the Indictment, either consensual or a stop based on probable cause, it was "objectively reasonable" and therefore no Fourth Amendment violation occurred. Defendants' Memorandum at 18–20. However, neither case governs the validity of the instant indictment.

First, as the Indictment charges a conspiracy in violation of § 241, against a group of drug dealers, and not a specific individual, the Defendants' reasonable be-

liefs regarding their encounter with Agent White are irrelevant as the validity of a conviction under § 241 does not depend on whether Defendants actually were successful in violating someone's protected constitutional rights but whether they entered into the alleged conspiracy with the intent to do so. Discussion, *supra*, at 454. Second, even if those circumstances were relevant, as they might be in the case of an indictment brought under § 242, neither case involved a criminal prosecution against a police officer under 18 U.S.C. § 241 or § 242. Therefore, the Court in *Graham* and *Whren*, had no occasion to consider the extent to which the issues raised in both cases had any relevance to a criminal prosecution under these statutes. Third, Defendants' argument assumes, without authority, that the holdings in these cases are applicable to the instant prosecution.

As noted, the question in *Graham* was whether, in a § 1983 action seeking damages against police for excessive force in connection with a stop of an automobile and a physical seizure of the plaintiff, the liability of the police officers should be determined exclusively under the Fourth Amendment. In *Graham*, the Court held that the sole test for an excessive force claim under § 1983 was the Fourth Amendment's prohibition against unreasonable searches and seizures, *Graham, supra*, at 386, 109 S.Ct. 1865, and therefore, that, the officers' subjective motives or intentions, whether good or bad, were irrelevant. *Id.* In *Whren*, the issue was whether a defendant should be permitted to suppress evidence from a traffic stop based on the officers' subjective purposes to investigate possible narcotics possession regardless of the existence of probable cause to stop the defendant's vehicle for a traffic violation. In *Whren*, the Court held that in applying the exclusionary rule based on alleged Fourth Amendment viola-

tion in connection with a traffic stop, the investigators' subjective intentions are also irrelevant. *Whren, supra,* at 813, 116 S.Ct. 1769. Thus, neither case had occasion to consider whether the objective reasonableness standard applicable to a claim based on a violation of the Fourth Amendment, or as a basis to invoke the exclusionary rule in a criminal proceeding, could bar prosecution under § § 241 and 242. Defendants cite no case which has applied *Graham* or *Whren* to a prosecution under either statute, and the court's research has revealed none.

Even assuming for the sake of analysis that the objective reasonableness standard for determining civil liability under § 1983 is applicable to a criminal prosecution brought pursuant to § 241, whether the facts presented to Defendants prior to their alleged encounter with Agent White objectively and reasonably established either reasonable suspicion or probable cause to effect a reasonable seizure of the agent and the funds he was carrying, is not determinative of whether Defendants conspired with the requisite intent to sustain conviction under § 241. Defendants' attack on Count I therefore fails as even if the objective reasonableness standard is applicable to an alleged violation of § 241, the Indictment nevertheless requires evidence at trial that when Defendants entered into the conspiracy, Defendants intended willfully to violate the Fourth Amendment rights of their intended victims by subjecting them to seizures based on conduct that was objectively *un* reasonable in light of all of the surrounding circumstances that Defendants contemplated. *See Graham, supra,* at 396, 109 S.Ct. 1865 (*citing Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (the question is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.")). The error in Defendants' reliance upon *Graham* and *Whren*

therefore is that their argument assumes Defendants acted lawfully in carrying out their official duties based solely on objective and reasonable grounds. However, the Indictment alleges they conspired with specific intent to violate constitutional rights, *i.e.,* that they intended to act against protected persons even if, for Fourth Amendment purposes, the circumstances were objectively reasonable to justify a seizure. The existence of such circumstances does not require the conclusion that Defendants did not conspire with an intent to willfully violate the rights of the victims as alleged. Rather, the allegation refutes any suggestions Defendants acted in an objectively reasonable manner.

Thus, the Indictment will permit the Government to establish at trial that Defendants' intention when they conspired, and, as evidence of their conspiratorial anti-constitutional intent, when they acted against Agent White, was to steal and extort funds from drug dealers regardless of the presence of probable cause or reasonable suspicion at the time of the planned thefts, thereby rendering irrelevant whether the circumstances Defendants expected, in accordance with the purposes of the conspiracy, to confront, and in fact did confront, were objectively reasonable in justifying the seizures that took place pursuant to the conspiracy. Therefore, the Defendants' intent regarding adherence to constitutional protections when they entered into the alleged conspiracy will be the overriding issue for trial in this case. "Since the gravamen of the offense is conspiracy, the requirement that the offender must act with the specific intent to interfere with the federal rights in question is satisfied." *United States v. Guest, supra,* at 753–54, 86 S.Ct. 1170 (upholding indictment for violation of 18 U.S.C. § 241 to violate rights secured under Fourteenth Amendment equal protec-

tion clause and the constitutionally recognized freedom of interstate travel) (citing *Screws, supra*). The allegation in Count I that Defendants conspired with the criminal intent required for conviction under § 241 thus negates the assertion that Defendants agreed to act against the Jamaican drug dealers only when the circumstances made it "objectively reasonable" to do so. Accordingly, the alleged intent to violate constitutional right allegations, a required element of § 241, forecloses finding, on the face of the Indictment, that no crime is alleged. As such, the court finds that neither *Graham* nor *Whren* provide any ground for dismissal of this count of the Indictment. Alternatively, absent a full proffer on the record in this case of the evidence the Government expects to offer in support of Count I, a dismissal of Count I on the ground that the objective reasonableness test as applicable to prove an alleged Fourth Amendment violation, enunciated in *Graham,* and applied in *Whren, supra,* bars prosecution in this case, as a matter of law, would be premature. *Alfonso, supra,* at 776.

Further, and importantly, as Count I also charges Defendants with a conspiracy to violate the due process rights of persons believed to be drug dealers who are also protected under the Fourteenth Amendment, by stealing their money, proof of Defendants' intent to do so is all that is required. As the Fourteenth Amendment's due process clause, unlike the Fourth Amendment, does not include an objective reasonableness standard, the holdings in *Graham* and *Whren* are irrelevant to whether this alleged constitutional violation was also among the unlawful purposes of the charged conspiracy. *See McClean, supra,* 1255–56 (victims of police theft by extortion of drug proceeds entitled to have "status of seized funds determined by due process."). Therefore, Defendants' contention that the holdings in

*Graham* and *Whren* present a basis for dismissal of Count I is without merit.

**B. Count II Conspiracy to Violate 18 U.S.C. § 641.**

Count II of the Indictment charges Defendants with a conspiracy to steal and convert government property, as prohibited by 18 U.S.C. § 641, in violation of 18 U.S.C. § 371. Based on the allegations, such conspiracy relates to the described theft from the West Avenue stash house which occurred on January 7, 2000, Indictment, Count III, and from Agent White on February 13, 2000, Indictment, Count IV. Defendants contend, based on their reading of the Indictment, that because the money was voluntarily surrendered by the agent as part of the investigation, or because Defendants objectively and reasonably believed they had probable cause to seize the money from a suspected drug dealer, the money was thus subject to seizure and forfeiture, according to Defendants' objectively reasonable belief, and therefore lost its character as government funds subject to theft through the relation-back doctrine. Defendants' Memorandum at 14–15; Defendants' Reply at 23. There are two difficulties with Defendants' creative theory.

First, as discussed, because in this count Defendants are charged with conspiracy to violate § 641, what they believed to be the facts at the time of any substantive offense resulting from the conspiracy is irrelevant to the conspiracy charge as whether the object of a conspiracy is in fact accomplished, or, as pertinent to Defendants' theory, is capable of being accomplished, is irrelevant to the crime of conspiracy and the legality of Count II. Discussion, *supra,* at 454. Second, even if Defendants' beliefs as to the ownership interests in the money seized from Agent White were relevant, it is generally held

that conviction for theft of government property under § 641 does not require proof that the defendant knew the property taken belonged to the government. *United States v. Jermendy,* 544 F.2d 640, 641 (2d Cir.1976), *cert. denied,* 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977) (citing cases); *United States v. Sicurella,* 834 F.Supp. 621, 626 (W.D.N.Y.1993), *aff'd sub nom., United States v. LaPorta,* 46 F.3d 152, 158–59 (2d Cir.1994). Due process is satisfied by showing a defendant engaged in wrongful conduct and a defendant "may not complain that facts out[side] his knowledge brought into play federal penalties or enhanced punishment." *Sicurella, supra,* at 626 (quoting *United States v. Bolin,* 423 F.2d 834, 837 (9th Cir.1970)). Thus, as with Count I, the allegation that Defendants conspired with an intent to steal property belonging to another forecloses dismissal of Count II on the basis that, as Defendants' assert, Defendants acted against Agent White and the stash house with an intent to lawfully seize contraband and subject it to forfeiture. The allegation that the Defendants involved in the conspiracy acted with the intent to steal overrides Defendants' contention that the Indictment establishes Defendants intended to act lawfully in respect to the property. Additionally, the lack of relevancy to the conspiracy charge of the property's status as a proper subject for theft renders Defendants' argument that no theft was possible based on the relation-back doctrine equally irrelevant to the facial validity of Count II.

 Where a conspiracy to commit a particular crime is charged, it is necessary to allege that the co-conspirators agreed with the same degree of criminal intent required for the object crime. *Feola,* 420 U.S. at 686, 95 S.Ct. 1255 (1975) (citing cases). Accordingly, the Supreme Court has stated that "a greater degree of intent for conspiratorial responsibility than for responsibility for the underlying substantive offense" is not required. *Id.* at 688, 95 S.Ct. 1255. Therefore, as knowledge of the government's ownership of the property alleged to have been stolen in violation of § 641 is not required, such knowledge is also irrelevant to the intent necessary to establish a conspiracy to commit such a theft in violation of 18 U.S.C. § 341 as alleged in Count II. Thus, Defendants' guilt on this count will turn on whether they conspired to steal property which may have been owned by the government regardless of whether the property in fact belonged to the government and whether it could have been subject to forfeiture if the facts were as Defendants supposed. *Id.* at 693, 95 S.Ct. 1255 (knowledge of a fact upon which federal jurisdiction is based need not be alleged to sustain a federal conspiracy charge). "That individuals know that their planned joint venture violates federal as well as state law seems totally irrelevant to that purpose of conspiracy law which seeks to protect society from the dangers of concerted criminal activity." *Id.*

Further, as discussed, Discussion, *supra,* at 453–56, in connection with Defendants' attack on the legal viability of Count I, as Defendants are charged, in Count II with conspiracy to violate § 641, any questions regarding whether the money actually taken from Agent White was in fact government funds is also irrelevant as the factual capacity to complete the substantive offense which is the object of the conspiracy does not bar prosecution for a conspiracy to commit the offense. Thus, any beliefs Defendants assertedly held regarding the actual character of the source of the funds at issue are equally irrelevant to the validity of Count II. Either Defendants conspired with the intent to steal the property taken from the stash house and the money taken from the un-

dercover agent or they did not. If they did, it cannot be said they intended to seize the property and funds with a lawful purpose thereby displacing, the Government's ownership of the property on the basis of the relation back doctrine. In any event, as explained, the identity of the property and the actual ownership of the property allegedly taken by Defendants as the Government's is irrelevant to a charge of conspiracy to violate § 641. Moreover, as an intent to steal at the time the alleged conspiracy was entered into and subsequently acted upon and an intent to enforce the law, one criminal, as the Indictment alleges, the other lawful, as Defendants assert, cannot logically coexist at the same time, Defendants' contention that they were merely acting to interdict illegal drug activity whey they entered the stash house and encountered Agent White requires trial on the question of their actual purpose.

■ Finally, that the Indictment does not state facts upon which it can be found that Defendants forcibly took the cash from the agent, as Defendants argue, Defendants' Memorandum at 14, is equally irrelevant as there is no defense to a § 641 charge based on the government permitting theft of its property pursuant to sting investigation. Section 641 does not require proof of a lack of consent to an alleged theft nor does its text provide that such consent establishes a defense. *See LaPorta, supra* at 158; *Sicurella, supra,* at 627 (where government role limited to "facilitating" defendant's criminal conduct in destruction of government property no defense is established). Even if it existed, such a defense would require trial. Thus, as discussed, neither is such consent an element or defense to a conspiracy to violate § 641. Whether Defendants acted with a lawful purpose without the intention of violating constitutional rights, the predi-

cate for Defendants' contention, that because Defendants seized contraband subject to forfeiture proceedings no theft was possible, also requires trial. Again, because Count II charges a conspiracy to violate § 641, the question is whether Defendants agree to steal property that unknown to them belonged to the government; whether the property at issue may have also been subject to eventual forfeiture, and thus not subject to a theft, is therefore irrelevant. The court notes Defendants do not raise similar arguments with respect to the alleged thefts from the stash house which is the basis for Count III of the Indictment.

Further, Defendants do not argue the seizure of the money initiated either federal or state forfeiture proceedings, or even that such proceedings were commenced or consummated, as to any property which is the subject of the instant indictment. Therefore, the relation-back doctrine does not apply to the property stolen by Defendants as alleged under Count II. As noted, one cannot intend to lawfully seize property for the purpose of initiating forfeiture proceedings and at the same time intend to steal it. There is, thus, no basis to find, on the face of the Indictment, that it was legally impossible for Defendants to have acted with the intent required to support both the substantive offense of violating § 641, *i.e.,* a general intent to steal without knowledge of the government's ownership interest, and the conspiracy charge as alleged in Count II. Accordingly, Defendants' asserted grounds for dismissal of Count II are without merit.

C. *Count IV—Theft of Government Property From Agent White*

In this count, Defendants are charged with the substantive violation of 18 U.S.C. § 641 based on the alleged robbery, theft, or conversion of the money taken from Agent White on February 13, 2000. De-

fendants reiterate their arguments against Count II adding that the Indictment fails to allege facts upon which it can be found that Defendants "acted unlawfully" as to Agent White in the course of obtaining the money. Defendants' Reply at 20. As explained in connection with Defendants' challenge to Count II, there is no support for Defendants' theory that the Defendants acted lawfully in seizing the money so as to defeat, *ab initio*, the government's ownership or possessory interests in the money. Further, as Defendants' intent regarding their conduct, on February 13, 2000, in relation to Agent White, including whether they acted to lawfully seize the money as drug proceeds or steal the money, is the general issue raised by the Indictment, there is no basis to dismiss Count IV at this stage. *Williams, supra; Knox, supra; Alfonso, supra; Casamento, supra; Contreras, supra.*

D. *Counts V, VI, and VIII—Conspiracy to Violate the Hobbs Act, 18 U.S.C. § 1951, and Violations of the Hobbs Act by Robbery and Extortion.*

Count V alleges Defendants conspired to violate 18 U.S.C. § 1951 (" § 1951" or "the Hobbs Act") by robbery and extortion against CS–1, and Agent White. Count VI alleges Defendants committed a substantive violation of the Hobbs Act by robbing and extorting money from Agent White, and Counts VIII and IX charge Defendant Darnyl Parker with substantive Hobbs Act violations based on extortions of $1,000 from CS–1 on November 17, 1999 and January 5, 2000, respectively. Defendants assert that because the counts fail to allege facts from which it can be determined that Defendants intended an actual or potential effect upon interstate commerce, they must be dismissed. Defendants' Memorandum at 31–33; Defendants' Reply at 26–28.

To support a violation of § 1951, it is only necessary to show that the effect on interstate commerce flowing from the defendant's threatened extortion be "potential or subtle." *United States v. Curcio,* 759 F.2d 237, 241 (2d Cir.1985) (internal citation omitted). Where the government has established a narcotics sting investigation using its own funds to ensnare the unwary offender, the theft of such funds from an undercover agent mistakenly believed to be a narcotics purchaser, and the potential resultant loss of such funds as a source of future drug transactions, has been held to be a sufficient nexus to interstate commerce to support a Hobbs Act violation based on the depletion-of-assets theory. *United States v. Jones,* 30 F.3d 276, 285 (2d Cir.) (citing *United States v. Daley,* 564 F.2d 645, 649 (2d Cir.1977)), cert. denied, 513 U.S. 1028, 115 S.Ct. 602, 130 L.Ed.2d 513 (1994).

As relevant to the instant case, the supposed drug purchaser's ability to buy more drugs, a commodity moving in interstate commerce, is potentially reduced by the robbery or extortion thereby supporting federal jurisdiction under the Hobbs Act. *Jones, supra,* at 285; *Curcio, supra,* at 241. Where the charge is an attempted violation, an actual effect on commerce need not be established, only "a possibility thereof." *Jones, supra,* at 285 (internal citation omitted). Moreover, in a conspiracy or attempt to violate § 1951, it is sufficient if the purpose of the conspiracy was alleged to "do acts which, *had they been attainable,* would have affected commerce." *Jannotti, supra,* at 591 (emphasis added).

In this case, Defendants are charged in Count V with conspiracy to rob and extort money from persons they believed to be drug dealers. Whether the charged conspiracy was or could ever be successful in attaining this unlawful objective does not

negate the potential effect upon interstate commerce from occurring as Defendants are alleged to have intended such effect by their unlawful plan. Moreover, had Defendants succeeded in their plan, the intended effect upon commerce would have occurred. Thus, the fact that in Count VI Defendants are alleged to have attempted to carry out their scheme against an undercover government agent, using government funds to execute the investigation, is also irrelevant to the validity of the Indictment on its face. *See Jones, supra,* at 285–86 (upholding convictions for Hobbs Act conspiracy and substantive violations where government funds intended to purchase drugs were stolen from undercover agent); *Jannotti, supra,* at 592–93 (upholding Hobbs Act conspiracy conviction where defendants, municipal council members, obtained funds from undercover agents posing as foreign investors seeking favorable governmental action on a fictitious hotel development project).

In *Jannotti,* the court rejected defendants' argument that because it was factually impossible that the illicit transaction, as represented to defendants by the undercover investigation, could ever have affected interstate commerce, federal jurisdiction was insufficient to support Hobbs Act liability. *Jannotti, supra,* at 592–93. The *Jannotti* majority opinion cited several cases in which Hobbs Act convictions involving undercover investigations were sustained despite the fact that because of the government's involvement no impact upon interstate commerce was likely to have occurred. *Id.* For example, in *United States v. Rindone,* 631 F.2d 491 (7th Cir.1980), the Seventh Circuit rejected a claim that defendant's Hobbs Act conviction for extorting municipal work permits was invalid for lack of the requisite interstate nexus where the government supplied the money used in the extortionate

scheme based on the "federal interest in deterring even futile threats to interstate commerce." *Rindone, supra,* at 493 (internal citation omitted). Similarly, where the charge is a Hobbs Act conspiracy, if the future conduct defendants are alleged to have agreed upon included all of the elements of a violation of § 1951, the fact that because of circumstances unknown to defendants the intended effect upon interstate commerce is impossible of completion is no defense. *See Jannotti, supra,* at 592 (citing *Rose, supra,* at 235). Here, the allegation in Counts V and VI, respectively, is that Defendants conspired and attempted to rob and extort drug proceeds from suspected drug dealers thereby depleting the assets available to such drug dealers to conduct future drug transactions.

Defendants rely on *United States v. Jones, supra,* for the proposition that a defendant's conviction under § 1951 based on robbery is insufficient if the proof shows only an intent to rob. Defendants' Memorandum at 33. While the court in *Jones* noted this proposition was a correct instruction to the jury in that case, *Jones* at 285, the court also sustained defendants' convictions for Hobbs Act violations, including a Hobbs Act conspiracy, if the jury also found that there was an actual or potential effect upon interstate commerce based on evidence that the stolen money represented a payment for an expected drug transaction, and the jury found such transactions were of an interstate character. *Id.* Thus, in affirming defendants' Hobbs Act conspiracy convictions, the court in *Jones* expressly relied on *Jannotti, supra,* finding that convictions for Hobbs Act attempt and conspiracy violations have been sustained "even without evidence of an actual effect on interstate commerce." *Jones* at 284. Defendants contend Counts VIII and IX are legally deficient for the same reasons asserted as

to Counts V and VI. Defendants' challenge to Counts V, VI, VIII, and IX is therefore without foundation.

E. *Count VII—Possession of a Firearm in Violation of 18 U.S.C. § 924(c).*

In Count VII, Defendants are alleged to have knowingly, willfully and unlawfully carried and possessed a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). Defendants argue this count is facially defective in that it fails to state facts upon which Defendants could be found to have so used their service weapons as Defendants claim they were on duty at the time of the incidents described in Counts V (the Hobbs Act conspiracy count) and VI (the Hobbs Act robbery and extortion count involving the alleged theft from Agent White), the crimes of violence upon which Count VII is based. Defendants' Memorandum at 28–30. Defendants rely upon *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) in which the Supreme Court limited the meaning of the word "use" of a firearm in connection with a drug offense under § 924(c). However, as the Government points out, Government's Amended Response at 26, Defendants are charged with the post*Bailey* amended version of § 924(c) and, accordingly, *Bailey* is inapposite. Defendants do not dispute the Government's position that § 924(c), as amended, applies to Count VII. Thus, *Bailey* is inapposite.

As amended, § 924(c) prohibits use or carrying of a firearm "during and relation to any crime of violence" or possession of a firearm "in furtherance of such crime." Count VII explicitly alleges Defendants carried and possessed a firearm "in furtherance of [the crimes of violence alleged in counts V and VI]." As such, Count VII adequately tracks the language of the statute, and is not defective on this basis. Defendants do not dispute that Counts V

and VI charge crimes of violence within the meaning of § 924(c). Whether the Government can establish the elements of the offense as alleged in Count VII beyond a reasonable doubt is, accordingly, a question that must await trial. *Alfonso, supra.*

Defendants' reliance on *Parr v. United States,* 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), Defendants' Memorandum at 29–30, for the theory that the requirement that Defendants, as police officers, be armed while on duty, negates liability under § 924(c), is misplaced. In *Parr,* a mail fraud case, the Supreme Court held that defendants use of the mails could not serve as the mailing to establish the required interstate nexus in furtherance of the alleged scheme to defraud because the defendants were required by state law to mail the tax assessments, fraudulently inflated by defendants' embezzlements, upon which the defendants were to receive the financial benefits of their scheme. *Parr, supra,* 391, 80 S.Ct. 1171. The Court did not hold in *Parr* that all mailings required by law could never provide the jurisdictional element for federal mail fraud convictions; rather, based on the particular circumstances presented in that case, the Court found the state law mandated mailings, because they were to be mailed regardless of the scheme, did not directly advance the fraud in that case, and therefore were insufficient to support a conviction for mail fraud. *Id.*

Nevertheless, the Supreme Court has held that legally required mailings may serve as a jurisdictional basis for a mail fraud charge. *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). In *Schmuck,* the Court sustained a mail fraud conviction based on defendants' mailings of fraudulent automobile title applications required by state law to be mailed, *Schmuck, supra,* at 713 n. 7, 109 S.Ct. 1443, as an "essential

step" in assuring the success of the scheme to defraud by the sale of vehicles with fraudulently lowered odometer settings. *Id.* at 714, 109 S.Ct. 1443. Defendants cite no authority that an on-duty police officer who is required by law or regulation to be armed cannot be guilty of violating 18 U.S.C. § 924(c). By definition, an officer who commits a robbery or other crime of violence acts outside the scope of his authority through his own motivation, not by force of law, and it cannot be admitted that state law requires officers use or possess their service weapons while committing such crime. If Defendants are found not guilty of the substantive violent crime allegations in Counts V and VI upon which Count VII is predicated, they will not be guilty of the § 924(c) charge. As such, Defendants' challenge to Count VII is baseless.

## F. *Count X Attempted Money Laundering.*

In this count, Defendant Darnyl Parker is alleged to have violated 18 U.S.C. § § 1956(a)(3)(A) and 2. Specifically, it is alleged that with the intent to promote a specified unlawful activity, Parker acted as a principal, or as an aider and abettor, in conducting and attempting to conduct a financial transaction with CS–1 as defined in § 1956(c)(4) with funds alleged to be proceeds of unlawful drug activity in violation of 21 U.S.C. § 841(a)(1). Defendants contend that because CS–1 was cooperating with the investigation he did not intend to actually complete the alleged financial transaction and, therefore, based on the Indictment, because CS–1 committed no offense, Parker also could not be culpable as a principal, nor having aided and abetted, in committing the charged offense under 18 U.S.C. § 2. Defendants' Memorandum at 34.

In Defendants' motion for further particulars, Defendants requested the Government particularize whether Darnyl Parker is alleged to have acted as a principal or as an aider and abettor with respect to this offense, and whether Defendant or "the principal actor" conducted or attempted to conduct the alleged transaction. Defendants' Motion for a Bill of Particulars, Request Nos. 70, 73. However, the Government declined to respond to the requests, and the Government's refusal to provide the requested particulars was upheld by the court on the grounds that such requests sought the Government's theory of prosecution and evidentiary matters. D & O at 27–28. Therefore, for the purposes of analysis, the court assumes that either theory of criminal liability under the statute, or both, may be the subject of proof and argument at trial. However, the court notes the Government now appears to assert that Parker committed the offense as a principal, not as an aider and abettor. Government's Response at 32.

Section 1956 (a)(3), by its terms, prohibits both completed violations of the statute as well as attempted violations, and does not require joint action to impose culpability upon one who conducts or attempts to conduct a prohibited financial transaction as defined by the statute. As relevant, § 1956(a)(3)(B) prohibits anyone "[w]ho [ ], with intent to promote the carrying on of specified unlawful activity . . . *conducts or attempts* to conduct a financial transaction involving property *represented* to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity . . ." (emphasis added). A financial transaction includes one involving the use of currency, 18 U.S.C. § 1956(c)(4), (5), and a specified unlawful activity includes sale or distribution of controlled substances. 18 U.S.C. § 1956(c)(7). "Represented" means "any representation made by another person" at

the direction of a federal investigator or prosecutor. *Id.*

Based on the facts that appear in the Complaint, Count X arises from an agreement between Parker and CS–1 to invest money derived by Parker from CS–1, in return for confidential investigative information, in future drug transactions expected to produce a profit to Parker. Complaint ¶¶ 13–14; *see also* Government's Amended Response at 36. As such, Count X tracks the language of the statute and properly alleges Parker engaged in a prohibited financial transaction based on the representation of CS–1, as authorized by government investigators, that the money was derived from illegal drug sales, and whether the Government's evidence can establish each element of the offense must await trial. It is irrelevant that the proceeds of the unlawful activity are alleged as used to promote the same unlawful activity. *United States v. Skinner*, 946 F.2d 176, 177–78 (2d Cir.1991) (proceeds from drug sales used to purchase additional drugs in furtherance of defendants' drug trafficking operation sustains money laundering conviction under 18 U.S.C. § 1956(a)(1)(A)(i)).

It is undisputed that one charged under 18 U.S.C. § 2 may be guilty as a principal or as an aider and abettor in accomplishing the substantive offense. Here, based on the specific allegations in Count X, it is apparent that Parker is alleged to have conducted or attempted to conduct, with the assistance of CS–1, a prohibited financial transaction using drug trafficking proceeds to purchase more narcotics for resale, eventually returning a profit to Parker. Government's Response at 32 (under Count X "it is Parker who engages in the unlawful transaction."). Thus, Parker, may, depending on the evidence, be found to have conducted or attempted to conduct a prohibited financial transaction with the assistance of CS–1.

The cases on which Defendants rely, Defendants' Memorandum at 34, in support of their argument that the Government cannot, based on the Indictment's allegations, meet its burden of showing that Defendant Darnyl Parker aided and abetted a principal because the "principal" in the instant case is a Government informant who only pretended to commit the underlying principal offense are inapposite. Specifically, at issue in *United States v. Perry*, 643 F.2d 38 (2d Cir.1981), was a charged conspiracy to aid and abet in the commission of a drug trafficking violation. *Perry, supra,* at 45–46. "To find such a conspiracy it is, of course, necessary to show that the defendants have agreed to pursue a common criminal objective." *Perry, supra,* at 46. In contrast, in the instant case, Darnyl Parker is charged with a substantive offense, including an attempted aiding and abetting offense. Accordingly, *Perry* is factually distinguishable.

In *United States v. Ruffin*, 613 F.2d 408 (2d Cir.1979), the court sustained the conviction as an aider and abettor of a defendant who, although personally incapable of committing a specified crime involving fraudulently obtaining funds, nevertheless caused an agent who lacked any criminal intent, but possessed the capacities to engage in the proscribed conduct, to do so. The court's affirmance was based on a distinction between a violation of 18 U.S.C. § 2(a), which requires that a defendant could not be found guilty as an aider and abettor of alleged criminal conduct unless the other individual was found to have committed the criminal conduct as a principal, and 18 U.S.C. § 2(b) which provides that a person who is incapable of personally committing a specified crime, but who causes another to do so may be punished

as a principal. *Id.* In the instant case, there is no indication that Darnyl Parker is alleged to be culpable under Count X based only on 18 U.S.C. § 2(a). Moreover, as Parker is alleged to have attempted the § 1956 violation, the absence of a completed offense by another, *i.e.*, CS–1, is irrelevant to Parker's liability. In any event, the Government's primary theory at trial is that Parker engaged in the § 1956 offense as the primary actor. As such, *Ruffin* is inapplicable to this case.

In *United States v. Elusma*, 849 F.2d 76 (2d Cir.1988), the court acknowledged that a conviction of aiding and abetting pursuant to 18 U.S.C. § 2(a) requires proof that the principal committed a criminal offense and, thus, to have had the "essential criminal intent." *Elusma, supra,* at 78. The court, however, sustained the defendant's conviction of aiding and abetting in the preparation of filing false documents with the Immigration and Naturalization Service ("INS"), despite the fact that the alleged principal was not indicted, as the evidence demonstrated that the false papers were submitted to the INS by other participants in the charged illegal scheme. *Id.* As such, the facts in *Elusma* have no application to the instant case and *Elusma* does not support Defendants' assertion that absent a principal's possession of criminal intent, no accomplice liability exists.

 In this case, Count X also charges Parker with an attempted violation of § 1956. Courts have held that a defendant is guilty of an attempt despite the fact that his accomplice is an undercover agent who does not intend to commit the underlying crime. *See United States v. Washington*, 106 F.3d 983, 1005 (D.C.Cir.1997) (holding that although principal is undercover agent who lacked actual intent to commit crimes, accomplice who attempted to aid principal could be charged with attempting to aid in commission of crime as shared intent is not required; rather, question is whether, if facts were as defendant believed, principal would have been guilty) (*cert. denied*, 522 U.S. 984, 118 S.Ct. 446, 139 L.Ed.2d 382 (1997)). *See also United States v. Jordan*, 927 F.2d 53, 55 (2d Cir.) ("Those who aid and abet [an undercover agent] cannot expect insulation from criminal responsibility"), *cert. denied*, 501 U.S. 1210, 111 S.Ct. 2811, 115 L.Ed.2d 983 (1991). At common law, "[f]actual impossibility, where the intended substantive crime is impossible of accomplishment merely because of some physical impossibility unknown to the defendant, is not a defense." 2 Wayne R. LaFave & Austin W. Scott, Jr., SUBSTANTIVE CRIMINAL LAW 41 (1986). *See Washington, supra,* ("Factual impossibility is no defense.") (citing authorities). Here, assuming the evidence at trial establishes that CS–1 never intended to complete the drug transaction in which Parker thought he had invested, such intention is merely a fact unknown to Parker which prevents completion of the crime but does not exonerate Parker as a principal or as an aider and abettor in the alleged attempt to violate § 1956.[6] Thus, the fact that CS–1 was cooperating in the investigation and therefore did not carry out or intend to carry out the drug transaction using funds pro-

---

6. The principle is different in the case of conspiracy, where it is generally held that no agreement can occur between a single defendant and undercover government agent as the agent does not intend to agree. *See United States v. Chase*, 372 F.2d 453, 459 (4th Cir. 1967) (citing authorities). *See also United* States v. Goldberg, 756 F.2d 949, 958 (2d Cir.), *cert. denied*, 472 U.S. 1009, 105 S.Ct. 2706, 86 L.Ed.2d 721 (1985). However, in contrast to conspiracy, an attempt depends on the intent and conduct of the defendant alone. *Washington, supra,* at 1005.

vided by Parker, as Parker is alleged to have expected, is irrelevant to Parker's alleged violation of § 1956, as either a principal or accomplice, and Defendants' assertion that no violation of § 1956, either as an attempt or a completed offense, could result based on Parker's involvement is without merit.

### G. Count XI—The Narcotics Conspiracy.

In this count, Defendant Darnyl Parker is charged along with his son, William Parker and a relative, Reno Sayles, with a violation of 21 U.S.C. § 846. Defendants contend that, based on reading of the Complaint, Darnyl Parker cannot be guilty of providing mere "assistance" to the alleged conspiracy and that the count only alleges at most a buyer-seller relationship, insufficient as a matter of law to support a § 846 charge. Defendants' Memorandum at 35–36. However, assuming that evidence of a buy-sell drug deal, without more, would be insufficient to support a conviction for conspiracy to engage in a narcotics transaction, as Count XI adequately tracks the language of the statute, the sufficiency of the Government's evidence to establish a conspiracy, rather than a casual drug purchase, must await trial. Moreover, Defendant Darnyl Par-

ker's relationship to the conspiracy as alleged, even if limited to assistance, may nevertheless be adequate to support conviction as a co-conspirator. *See United States v. Salinas,* 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (facilitating some but not all of the conspiracy's objectives with requisite intent sufficient to establish culpability as a member of the conspiracy).

■■■ Additionally, the presence of CS–1 does not defeat the possibility that a conspiracy can be proven. *United States v. Miranda–Ortiz,* 926 F.2d 172, 175–76 (2d Cir.), *cert. denied,* 502 U.S. 928, 112 S.Ct. 347, 116 L.Ed.2d 287 (1991) ("the presence of a government agent 'does not destroy a conspiracy in which at least two other private individuals have agreed to engage in an unlawful venture.' ")(quoting *United States v. Goldberg supra,* at 958). Here, the Indictment charges at least two other persons as co-conspirators, *i.e.,* William Parker and Reno Sayles, besides CS–1 even considering CS–1 as a government agent for purposes of pleading requirements applicable to a conspiracy count where such agents are involved. Discussion, *supra,* at 469 n. 6. Consequently, Defendants' challenge to Count X must be rejected.[7]

---

7. Defendants also rely on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) to support their contention that the Indictment is facially defective. Defendants' Memorandum at 3–12; Defendants' Reply at 4–5, 10. In *Apprendi,* the Supreme Court held that "other that the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Id.* at 2362–63; *United States v. White,* 240 F.3d 127, 133 (2d Cir.2001). "Rejecting a formalistic distinction between 'elements' and 'sentencing factors,' the Court ruled that it was impermissible to rely on a fact not found by the jury (other than a prior conviction) to impose a sentence above a

statutory maximum." *White, supra,* at 133–34 (citing *Apprendi* at 2365). Here, all the elements comprising each count are alleged in the Indictment, and Defendants concede as much. Defendants' Reply at 4 ("In this case; [sic] the point is that the elements *are* pled in the Indictment." (emphasis in original)). Thus, to whatever extent Defendants' sentences may be affected by the jury's finding of guilt on any count, the "facts" or "elements" upon which a Defendant could suffer a penalty beyond a statutory maximum will have been submitted to the jury. Moreover, Defendants do not explain how such statutory maximums could be exceeded based on the charges in this case. As such, *Apprendi* has no relevance to whether the Indictment

4. *Surplusage.*

A. *Count I—The § 241 Conspiracy.*

Defendants move to strike as surplusage in Count I, ¶ 2 references to "persons in the State of New York, including individuals in the City of Buffalo" alleged to be persons whose constitutional rights Defendants conspired to violate. Defendants' Motion at 17. In their Motion for a Bill of Particulars, Defendants requested the identification of any persons, as described in Count I, ¶ 2, other than the government agent and the confidential source, described elsewhere in Count I, who the Grand Jury believed were also "intended victims" of the alleged conspiracy. Defendants' Joint Motion for a Bill of Particulars and Discovery, filed August 28, 2000 (Doc. # 41) ("Defendants' Motion for a Bill of Particulars"), Request No. 7 at 1. Responding to Defendants' request, in its Amended Bill of Particulars, (Doc. # 48), the Government stated that the Grand Jury was not provided with evidence "of any other individuals *as referenced in defense request number 7*" reserving its right "to introduce other events and individuals as evidence of the conspiracy." Amended Bill of Particulars ¶ 5 (emphasis added).

Defendants contend that unless the Indictment's references to the unidentified persons, as contained in Count I, are stricken, Defendants will suffer prejudice and a violation of their Fifth Amendment right to be indicted based on evidence presented to a grand jury. Defendants' Motion at 18. In its response, the Government maintains that although the Grand Jury lacked the identity of others whom Defendants intended to act against through their conspiracy, the Indictment alleges that Defendants' unlawful purpose was to act against more than one person;

thus the references at issue do not constitute objectionable surplusage, and are amenable to proof at trial. Government's Response at 3.

■ Fed.R.Crim.P. 7(d) protects a defendant against prejudicial allegations that are neither relevant nor material to the charges made in the indictment, not essential to the charge, or unnecessary or inflammatory. *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir.1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 824 (1975). "Motions to strike surplusage will be granted only where the challenged allegations are 'not relevant to the crime charged and are inflammatory and prejudicial.'" *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir.1990) (quoting *United States v. Napolitano*, 552 F.Supp. 465, 480 (S.D.N.Y.1982) (citing authorities)). Further, if the material in question is subject to the government's anticipated proof at trial, it will not be stricken regardless of the degree of potential prejudice. *United States v. Climatemp, Inc.*, 482 F.Supp. 376, 391 (N.D.Ill.), *aff'd sub nom, United States v. Reliable Sheet Metal Works, Inc.* 705 F.2d 461 (7th Cir.), *cert. denied*, 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983). Whether to strike language from an indictment as surplusage is within the court's discretion. *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir.1962).

■ Here, Defendants seek to strike from Count I the reference to "persons in the State of New York, including individuals located in the City of Buffalo" as persons toward whom Defendants' conspiracy was directed because the Government conceded in its Bill of Particulars that the Grand Jury lacked evidence regarding such persons. Defendants' Memorandum at 17–18. This assertion is fallacious.

is facially defective in any regard as Defendants assert.

Simply because the Grand Jury did not have evidence of the identity of such persons against whom it found Defendants conspired to act does not mean that the object of the conspiracy as alleged was without evidentiary basis and the reference to unidentified potential victims thereby prejudicial. To the contrary, the Indictment makes several allegations that Defendants intended to act against more than the specific drug dealer they eventually, albeit mistakenly, believed was a "Jamaican" drug dealer. *See, e.g.,* (i) Defendants "...agreed ... to rob and steal money, property and drugs from *persons* whom they believed to be engaged in criminal activity...." Count I, ¶ 3; (ii) "Parker indicated that he worked with persons who 'go after *Jamaicans*' and 'try to rob *them.*'" Count I, ¶ 4; (iii) "It was further part of the conspiracy that Parker ... and CS–1 discussed robbing Jamaican drug *dealers.*" Count I, ¶ 6; (iv) "It was generally the manner and means of the conspiracy that the defendants would ... acquire information and knowledge regarding actual and suspected drug *dealers* ... to intimidate, threaten and extort *said drug dealers* in order to accomplish the objectives of the conspiracy." Count II, ¶ 4 (emphasis added).

Thus, fairly read, the Indictment alleges, based on evidence derived from an undisputedly extensive undercover investigation, that Defendants' conspiracy was not directed solely to a specific known individual, or a group of persons whose identities were known to the Grand Jury. Rather, its unlawful objective, as broadly alleged, was to violate the constitutional rights of suspected drug dealers, particularly those of Jamaican nationality, whenever the opportunity was presented. The specific identity, as requested by Defendants in their motion for particularization, of such Jamaican drug dealers as intended and potential victims of the conspiracy is therefore irrel-

evant to the charges, and the Government's failure to particularize such creates no basis to find the challenged statements constitute prejudicial surplusage. Moreover, given the plethora of Grand Jury findings regarding the scope of the conspiracy, Count I, ¶ ¶ 2—17, 19—35, Defendants' assertion that the Grand Jury failed to consider relevant evidence, or lacked competent evidence, in returning the Indictment is baseless. Accordingly, Defendants' motion to strike the material at issue from Count I is DENIED.

### B. *Count II—Theft of Government Property Conspiracy.*

Defendants seek similar relief as to references to "persons" believed to be suspected drug dealers, alleged in Count II, based on the same arguments considered in connection with Defendants' motion directed to Count I. Defendants' Motion at 18. For the reasons discussed, *supra,* in relation to Count I, Defendants' motion as to Count II regarding this request is DENIED.

■ Defendants further contend that references in Count II to "others unknown" should be stricken as well. Specifically, Count II, ¶ 2 alleges that Defendants conspired with "others unknown" to violate 18 U.S.C. § 641. Defendants argue that because, based an asserted lack of information in the Indictment and evidence revealed to them through pretrial discovery, there is no indication of the actual existence of such unknown coconspirators, the reference should be stricken to prevent any prejudicial inference by the trial jury that the conspiracy is "broader" than the proof will support. Defendants' Motion at 18. In response, the Government states that any variance between the allegation and its trial evidence can be resolved, if necessary, by striking the phrase at that

time. Government's Memorandum at 41. Defendants' contention is without merit.

First, unlike Count I, Count II specifically alleges the involvement of other coconspirators in the conspiracy to violate § 641. While Count II charges a conspiracy factually related to the civil rights violation conspiracy described in Count I, it is, nevertheless, a separately charged conspiracy offense. Thus, although Count I does not directly allege the involvement of unknown coconspirators, it is not illogical that such may in fact be the case, as stated in Count II, with respect to that conspiracy's theft of government property objective. Indictment Count II, ¶ 2. Accordingly, it cannot be said that the challenged reference to unknown persons in Count II has the effect of broadening unfairly the scope of the alleged conspiracy as Defendants assert. Rather, it seeks to state what the Grand Jury likely believed to be the case based on the evidence presented to it. *See United States v. Millar*, 79 F.3d 338, 345 (2nd Cir.1996) ("We have held that superficially inconsistent conspiracy determinations in the same proceedings are permissible where there is evidence that the defendant conspired with 'others unknown,' so long as the indictment actually mentions 'others.'") As discussed, Discussion, *supra*, at 444, Count II adequately tracks the statutory language, and is sufficient on its face to require trial. Accordingly, the court fails to see how the language at issue can conceivably be considered to be prejudicial surplusage. *Climatemp, supra*, ( material subject to proof not surplusage); *Dranow, supra*, (striking surplusage discretionary with court).

■ Defendants also attack the use of the verb "to rob" in paragraph 3 of Count II arguing that such term is objectionable as it is not included within the statute as an element of the § 641 offense. Defendants point out that § 641 employs the terms embezzle, steal, purloin, and covert, but not rob, in its definition of the offense. Overlooked, however, by Defendants' argument is that Count II alleges a conspiracy in violation of 18 U.S.C. § 371 having as its object a violation of § 641, not a violation of § 641 itself as an substantive offense. This conspiracy offense is properly charged as it incorporates the statutory elements of §§ 371 and 641. Specifically, Count II alleges that Defendants conspired "to steal, purloin, and knowingly convert to their own use" property of the United States in violation of § 641. The fact that the Indictment asserts that, in addition to a purpose to steal or purloin government property, among the conspiracy's objectives was an intention to rob someone of such property may assist the jury in an understanding of the body of proof which may be offered by the Government in support of the count. For example, evidence that one of the objectives of the conspiracy was to rob its intended victims would assist the jury in evaluating whether the conspiracy's unlawful objectives included an intention to steal or convert government property. While robbery includes an element of assaultive conduct, it also requires a showing of an unlawful taking of property from another, *i.e.*, stealing, thus a form of theft. *United States v. Miller*, 26 F.Supp.2d 415, 421 (N.D.N.Y. 1998) (use of descriptive titles to "mirror proof" government intends to offer at trial not surplusage). Further, such evidence may also be admissible to establish the Defendants' intent. *See* Fed.R.Evid. 404(b) (evidence of other wrongdoing admissible to establish defendant's intent, plan and absence of mistake). As such, the challenged reference in Count II to an intent to rob is not likely to confuse or mislead the jury, and as such does not constitute prejudicial surplusage.

■ Defendants also contend that the reference in ¶ 4 of Count II, that an objective of the conspiracy was to "intimidate, threaten and extort ... drug dealers" should be stricken as, according to Defendants, the Government conceded in its Amended Bill of Particulars, that the Grand Jury was not presented with evidence of the identity of other individuals that "were thought to be intended victims of the charged conspiracy." Defendants' Joint Motion for a Bill of Particulars, ¶ 7 at 1. As discussed, Discussion, *supra*, at 470–71, with regard to Defendants' motion to strike references to unidentified victims as alleged in Count I, the request confuses the allegation that Defendants' conspiratorial purpose included the objective of stealing money from more than one "Jamaican" drug dealer as such persons were identified by CS–1 to the conspirators with Defendants' request for the identities of such drug dealers, if known. The fact that the total number of intended victims were not at the outset immediately known or could not then be identified by name does not restrict the introduction of evidence that the object of the conspiracy as alleged included any "Jamaican" drug dealers of which Defendants became aware. The Government's particularization response does not concede the charged conspiracy's object was limited to only the supposed Jamaican drug dealer to whom Defendants were directed by CS–1 leading to their arrest in this case. In fact, as noted, the object of Count I is not directed to any specific drug dealer. Rather, the Government's "concession" merely states the obvious—that the names of additional potential victims as solicited by Defendant Parker in his conversations with CS–1 were not then known to CS–1 and thus were not presented to the Grand Jury during its consideration of the case. As such, the challenged material permits the Government to demonstrate what the actual facts were regarding the purported objectives of the conspiracy and the material is not prejudicial to the defense. *See Miller, supra,* at 421. The motion as to Count II is therefore DENIED.

## C. Count IV—Theft of Government Property.

Defendants seek to strike as surplusage use of the terms to "steal" and "purloin" as elements of the alleged violation of § 641 in Count IV. Defendants contend that while Count IV alleges sufficient facts upon which to convict based on an alleged conversion of government property, the Indictment fails to allege facts upon which it could be found that Defendants stole or purloined any property. Defendants' Motion at 19–20. Specifically, Defendants claim that because as police officers they were authorized to seize drug proceeds, their actions as alleged in the Indictment, could not constitute stealing or purloining of government property. *Id.* Defendants asserted the same theory as a basis to dismiss Counts I and II for legal insufficiency. Discussion, *supra,* at 452–64. Based on the reasons stated in connection with the court's rejection of this argument, *id.,* the court rejects the argument as a ground to strike use of the terms steal and purloin as surplusage in Count IV. Additionally, as statutory elements of the offense, the challenged alternative means by which the offense was committed cannot be said to be irrelevant, and Defendants suggest no basis to warrant finding they will suffer any undue prejudice if these elements remain in Count IV. Defendants' motion as to Count IV is, accordingly, DENIED.

## D. Count V—Hobbs Act Conspiracy.

■ Defendants request that the allegation in Count V that Defendants conspired with "others unknown" be stricken

as surplusage. Defendants' Motion at 20. Defendants argue that in the absence of providing Defendants with the identity of such alleged unknown additional co-conspirators, the defense will be prejudiced in that the jury may infer the charged conspiracy was broader than the evidence will support. *Id.* However, the mere fact that the Indictment contains a reference to such unknown persons does not warrant the conclusion urged by Defendants. The jury will also be instructed that the conspiracy must be established by the Government's evidence. Thus, if the Government fails to support the allegation regarding other unknown co-conspirators, it is more likely that such failure could undermine the jury's assessment of the strength of the Government's case than that it will work to the disadvantage of the defense. In any event, it is premature to make such a determination. Further, assuming the Government furnishes such evidence, the challenged references cannot be considered as prejudicial surplusage. *Miller, supra,* at 421 (allegations which "mirror proof" by government at trial not surplusage). Based on this analysis, the Defendants' motion as to Count V is DENIED.

### E. *Counts VIII & IX—Attempted Hobbs Act Violations.*

In these counts, Defendant Darnyl Parker is individually charged with two attempted violations of the Hobbs Act based on his alleged extortion of money from CS–1. Defendant contends the counts allege two "mutually exclusive" offenses in that they allege both the use of force and extortion under color of right. Defendants' Motion at 20. However, the court finds such contention to be the same as Defendants' attack on the Indictment asserting duplicity. Discussion, *supra,* at 449. As discussed, because disjunctive elements are properly pleaded conjunctively,

and do not thereby constitute separate offenses, Defendant's argument is without merit. *Id.* Further, because such alternative means of commission of the offense are statutory elements, it cannot be found that their presence in the Counts VIII and IX represent irrelevant material. *See Climatemp, Inc., supra.* Accordingly, there is no basis to find the challenged allegations are prejudicial surplusage. Defendants' motion as to these counts is therefore DENIED.

### F. *Count XI—Cocaine Trafficking Conspiracy.*

Defendants contend this count contains surplusage which should be stricken because it alleges that the Defendants charged in this count acted with "others unknown" to enter into the alleged conspiracy. Defendants' Motion at 21. Although the Government did not respond to Defendants' particularization Request No. 77 seeking the identity of such persons, this court has denied such further particulars. D & O at 17 (relying on *Torres v. United States,* 901 F.2d 205, 234 (2d Cir. 1990)) (holding denial of similar request proper in narcotics trafficking conspiracy where defendants were provided with detailed information through pleadings and discovery). As discussed, Discussion, *supra,* at 471, with respect to Defendants' attack on similar alleged surplusage in Count V, the Government's inability to provide evidentiary support for the existence of such unknown co-conspirators is more likely to have an adverse effect on the Government's case than upon the defense. Further, assuming the Government intends to offer proof in support of the allegation, it is not subject to a motion to strike. As with Count V, the issue is also premature. Accordingly, the challenged reference is not prejudicial surplusage, and the motion is DENIED as to this count.

5. *Defendants' Motion to Suppress.*

Finally, Defendants move to suppress all evidence gathered in this case derived from what Defendants characterize as deceptive investigative "techniques" supervised by the Government's attorneys who oversaw the investigation. Defendants' Motion at 22; Defendants' Memorandum at 25–27, 38–42; Defendants' Reply at 24. Defendants base their contention on three propositions: (1) the absence of judicial approval of the use of a "sting" type of undercover investigation in enforcing § 241; (2) the requirements of DR 1–102(A)(4) of the Code of Professional Responsibility which prohibits attorneys from engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation"; and (3) that the instant undercover investigation involved the Government's attorneys in unprofessional conduct as prohibited by DR 1–102(A)(4). Defendants' Memorandum at 27, 40.

■ First, undercover "sting" investigations initiated without probable cause have been held not to constitute a due process violation. *United States v. Jannotti, supra,* at 608–09, citing *United States v. Myers,* 635 F.2d 932, 941 (2d Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980) (no constitutional requirement of a showing of reasonable suspicion prior to initiating undercover sting investigation relating to suspected unlawful payments to members of Congress). Moreover, in this case, there is no serious dispute that the Government received incriminating information asserting Defendant Darnyl Parker engaged in unlawful payments from CS–1 that Parker and others associated with him had an interest in committing thefts from suspected drug dealers, and that such information was based on the personal experience and knowledge of CS–1. Complaint, ¶ ¶ 4, 5. Moreover, it is undisputed that Defen-

dants' alleged misconduct was the subject of extensive audio and visual recorded surveillance, which substantially corroborated, as alleged by the Indictment, CS–1's information. Thus, even if reasonable suspicion was a constitutional prerequisite to the commencement of a "sting" investigation, based on the record, there was a reasonable basis for the investigation at issue. Hence, that there is no caselaw specifically approving the use of undercover "sting" investigations to enforce § 241 is no bar to prosecution.

■ Second, Defendants fail to explain what specific conduct employed by investigators in this case could conceivably be viewed as deceptive and unethical within the meaning of any rules of professional responsibility. Indeed, opinions of state and local bar associations hold DR 1–102(A)(4) do not apply to prosecuting attorneys who provide supervision and advice to undercover investigations. N.Y. State Bar Assoc. Ethics Comm. Opinion No. 515 (1979); Assoc. of the Bar of the City of N.Y. Comm. on Professional Ethics Opinion No. 696, 1993 WL 837936. *See also Gidatex v. Campaniello Imports, Ltd.,* 82 F.Supp.2d 119, 123 (S.D.N.Y.1999) (prohibition against attorney misrepresentations in DR 1–102(A)(4) not applicable to use of undercover investigations initiated by private counsel in trademark infringement case). Nothing on the face of the Indictment or in the record indicates that, with the exception of the Defendants' alleged unlawful seizure of Agent White, any federal agent or attorney for the Government had, during the course of the five month investigation, any contact with any of the Defendants upon which such deception or misrepresentation taken at counsel's direction, as asserted by Defendants, could be based. Defendants' logic would, if accepted, mean that government attorneys could not supervise investigations in-

volving undercover agents and informants who cannot reveal their true identity and purpose to the targets of the investigation without thereby rendering the investigation futile and dangerous. There is no authority for such a conclusion.

 Third, even if the alleged misconduct, attributed by Defendants to the Government attorneys in this case, were deemed an ethical violation, and the relevant disciplinary rule was applicable to the instant facts, such does not warrant use of the exclusionary rule as a remedy for such violation. *United States v. Bidloff*, 82 F.Supp.2d 86, 100 (W.D.N.Y.2000) (citing *United States v. Lowery*, 166 F.3d 1119, 1124 (11th Cir.)) (violation of state bar rule of professional conduct, prohibiting attorney inducements to witnesses, provides no basis for application of federal exclusionary rule and holding 28 U.S.C. § 530(B), subjecting government attorneys to state rules of professional conduct, established no alternative basis for the exclusion of evidence in federal proceedings based on alleged misconduct of government attorneys), *rehearing and rehearing en banc denied* 180 F.3d 276, *cert. denied*, 528 U.S. 889, 120 S.Ct. 212, 145 L.Ed.2d 178 (1999). In *Lowery*, the court noted that pursuant to Fed.R.Evid. 402, the admissibility of evidence in federal criminal proceedings is limited only by the Constitution, acts of Congress, the Federal Rules of Evidence, or Supreme Court rules. *Lowery*, at 1125.

*United States v. Hammad*, 858 F.2d 834 (2d Cir.1988), relied on by Defendants, is not to the contrary. In *Hammad*, the court held that use of a sham grand jury subpoena to induce a represented witness to make incriminating statements violated DR 7–104(A)(1) prohibiting attorneys from contact with represented parties. *Hammad, supra,* at 839. The court further held, however, that suppression of evidence derived from such violation as a remedy is limited to violations of DR 7–104(A)(1) and must be applied "cautiously" as a matter of judicial discretion. *Id.* at 841.[8] Thus, the *Hammad* holding is limited to violations of DR 7–104(A)(1). *Gidetex, supra,* at 126 (*Hammad* does not require, and "discour[ages]," exclusion of evidence based on ethical rule violations, and noting that New York courts refuse to sanction violations of state Code of Professional Responsibility by suppression of evidence obtained as a result of such violations). Based on the record, there is no indication Defendants were represented during the course of the instant investigation, and Defendants do not contend otherwise. Thus, as Defendant challenge in this case is based on an asserted violation of DR 1–102(A)(4) and there is no basis to claim a violation of DR 7–104(A)(4) occurred, *Hammad* is inapposite.

Nor does *In re Gatti*, 330 Or. 517, 8 P.3d 966 (2000), relied on by Defendants, Defendants' Memorandum at 39–40, require a different result. In *Gatti*, the Oregon Supreme Court, as relevant to the instant case, held DR 1–102(A)(3), which supplements DRI–102(A)(4), applied to a private attorney who misrepresented himself as a chiropractor during the course of an alleged fraud investigation. The court refused to find a prosecutor's exception to DR 1–102(A)(3), *Gatti* at 976, and sustained a public reprimand sanction against the attorney. *Id.* at 979. As *Gatti* does

---

**8.** The court, in *Hammad*, did not consider the proposition relied upon in *Lowery*, that Fed. R.Evid. 402 does not recognize violations of the Code of Professional Responsibility, even when found by courts, as a grounds for suppression of evidence. Nor did the court find any alternative constitutional requirement which the government attorney's conduct could have been found to have violated.

not involve a government attorney's supervision of agents engaged in a formal criminal investigation, it is inapplicable on its facts. Moreover, the court's determination that DR 1–102(A)(3) forbids the use of undercover investigative techniques by attorneys in civil maters is contrary to caselaw in this circuit. *See Gidatex, supra* at 122 (holding that DR 1–104(A)(4) prohibiting circumvention of Disciplinary Rules through "dishonesty, fraud, deceit, or misrepresentation" not applicable to undercover investigation hired by private counsel to elicit statements from persons approached by investigators). In *Gidatex,* there was no indication that the investigators, who had been engaged by private attorneys, posing as interior decorators, caused the interviewed sales clerks to make "any statements they otherwise would not have made." *Id.* "The policy interests behind forbidding misrepresentations by attorneys are to protect parties from being tricked into making statements in the absence of their counsel and to protect clients from misrepresentations by their own attorney." *Id.* (citing cases). Accordingly, *Gatti* is neither controlling nor persuasive authority supporting Defendants' request for suppression of evidence.

In sum, there is no basis to exclude any evidence derived from the instant investigation based on an asserted violation of any relevant attorney disciplinary rules, and Defendants' motion to suppress should therefore be DENIED.

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss and for suppression of evidence should be DENIED.

Defendants' Motion to Strike Surplusage is DENIED.

SO ORDERED.

April 19, 2001.